DEFENDANT'S EXHIBIT 7

STATE OF CONNECTICUT )
                     ) SS:
COUNTY OF FAIRFIELD  )

### AFFIDAVIT OF KENNETH JAMES STUART

Kenneth James Stuart (hereinafter "Affiant"), being duly sworn and under oath, asserts that:

1. Affiant is a resident of Wilton, Connecticut. He has personal knowledge of all matters contained in this Affidavit.

2. Affiant was employed as the Art Director of The Curtis Publishing Company ("Curtis") from late 1943 to September, 1962, inclusive. During those years, Curtis' principal office was located in Philadelphia, Pennsylvania. Affiant's responsibilities with Curtis included the procurement and approval of all artwork which was published in The Saturday Evening Post magazine. Affiant was also charged twice during his employment at Curtis with redesigning the magazine's layout. From November, 1962, Affiant served as Corporate Art Director for Reader's Digest Association and Art Editor of the Reader's Digest magazine until his retirement in November 1977. Affiant was subsequently rehired under contract as a graphics and literary advisor for Reader's Digest.

3. Prior to joining the Saturday Evening Post staff, Affiant was a free-lance artist and prepared covers and illustrations for The Saturday Evening Post and other

D 000972

magazines. Prior to 1943, Affiant was also a member of the Society of Illustrators in New York City. As a result of his activities as an artist and membership in the Society of Illustrators, Affiant became personally acquainted with Norman Rockwell, the well-known American artist. Affiant developed a close personal relationship with Norman Rockwell during his years as Art Editor for <u>The Saturday Evening Post</u>. Rockwell worked with your Affiant during these years, and they remained friends until Norman Rockwell's death.

4. As Curtis' Art Director, Affiant was charged with negotiating Curtis' business transactions with Norman Rockwell. As a result of Affiant's position as Art Director for <u>The Saturday Evening Post</u>, Curtis and Norman Rockwell developed a close and friendly working relationship, in which there was mutual trust and respect. Norman Rockwell and his third wife spent the first night of their honeymoon at your Affiant's farm.

5. At no time during Affiant's tenure at Curtis (or, to the best of Affiant's knowledge, at any other time), was Norman Rockwell directly employed by either Curtis or The Saturday Evening Post Company ("Post"). Norman Rockwell maintained his own studio, paid his own bills, hired his own models, purchased his own supplies, etc., without financial assistance by either Curtis or Post. At no time did any representative of Curtis or Post exert any influence over Norman Rockwell's creative expressions or

D 000973

the manner in which he prepared illustrations for The Saturday Evening Post, other than normal editorial exchanges. At no time did Curtis or Post specifically commission any artwork from Norman Rockwell, with the exception of Rockwell's portraits of Dwight D. Eisenhower, John F. Kennedy and other celebrated persons about whom articles appeared in the magazine. Inside features appearing in the Post were assignments from your Affiant, but once assigned, Norman Rockwell would not consider receiving payment from The Saturday Evening Post for his expenses. Norman Rockwell was a professional free-lance artist.

6. In all, The Saturday Evening Post published approximately three hundred and twenty-one (321) cover paintings during Norman Rockwell's lifetime. During Affiant's association with Curtis, these covers were typically prepared as follows: Norman Rockwell would approach Affiant with a number of original sketches for new covers. Affiant would discuss these ideas with Norman Rockwell with normal editorial give and take, and express an interest in the ones which Affiant thought of as possible Saturday Evening Post covers. Norman Rockwell would then finish the approved sketches and bring them to Affiant. If Affiant found the covers or illustrations to be suitable, Curtis would purchase them from the artist for publication in the magazine. Affiant reserved the right to

D 000974

reject any illustrations he judged not suited for the magazine's purpose or character.

7. When Curtis purchased artwork for publication in The Saturday Evening Post, Curtis typically furnished Norman Rockwell with a copy of a standard Purchase Contract along with its payment check. Illustrative copies of this standard Purchase Contract are attached hereto as Exhibits "A" and "B". Curtis did not require Norman Rockwell to sign such Purchase Contracts.

8. Curtis and Norman Rockwell understood pursuant to such Purchase Contracts that Curtis would purchase all rights but retained only the first and second magazine rights to the covers or artwork. All book rights were specifically to be returned upon the request of Norman Rockwell. Any payment for book publications was made direct to Norman Rockwell, and Curtis did not share in such fees. In practice, Norman Rockwell retained the rights to reproduce his artwork other than as advertisements or commercial uses such as Christmas cards.

9. Curtis and Norman Rockwell agreed pursuant to such Purchase Contracts that Curtis was not purchasing the right to exploit the Rockwell illustrations or the Rockwell name for various commercial purposes, including the manufacture of dolls, dinner plates, Christmas tree ornaments and other paraphernalia. At no time during Affiant's association with Curtis did either Curtis or Post purchase or otherwise acquire the right to commercially

-4-

D 000975

exploit the Rockwell illustrations or the Rockwell name in the manner described above. Nor did Norman Rockwell ever designate Curtis or Post as his agents to license the production of dolls, dinner plates, Christmas tree ornaments or other paraphernalia which purported to be modeled after Rockwell covers or illustrations.

10. While engaged as The Saturday Evening Post's Art Director, Affiant represented to Norman Rockwell on Curtis' behalf that neither Curtis nor Post had any desire or intention to exploit the commercial potential of the Rockwell work (covers and illustrations) beyond publication in The Saturday Evening Post and the use of this work in the sales and promotion of the magazine. Any second or subsequent publication not for promotional work which would appear in The Saturday Evening Post required a second smaller payment to Norman Rockwell for the privilege to do so.

11. In the event third parties expressed a desire to reproduce any Norman Rockwell artwork which had been so purchased by Curtis, Affiant informed those parties that Norman Rockwell was solely responsible for licensing such reproductions.

FURTHER AFFIANT SAITH NOT.

*Kenneth James Stuart*
Kenneth James Stuart

D 000976

STATE OF CONNECTICUT  )
                      )  SS:
COUNTY OF FAIRFIELD   )

    Before me, a Notary Public in and for said County and State, personally appeared Kenneth James Stuart, who acknowledged the execution of the foregoing Affidavit, and who, having been duly sworn, stated that any representations contained therein are true.

    Witness my hand and Notarial Seal this 21st day of May, 1985.

My commission expires:
BETTY ROBINSON
Notary Public, State of Connecticut
County of Fairfield
My Commission Expires March 31, 1989

Notary Public
Printed: Betty Robinson
Resident of Fairfield County

-6-

D 000977

THE CURTIS PUBLISHING COMPANY
INDEPENDENCE SQUARE
PHILADELPHIA 5

December 1, 1953

Mr. Norman Rockwell

Arlington, Vermont

*We inclose our check*
for Thirty-five hundred dollars   *in payment for your*
*drawings, as follows:*

Cover: Girl and Mirror

### IMPORTANT

This check is offered and accepted with the understanding that The Curtis Publishing Company buys *all* rights in covers, illustrations and cartoons appearing in its publications. It should be clearly understood by artists that, as the company retains all North American (including Canadian) serial rights, the second use of covers, cartoons and illustrations in North American (including Canadian) newspapers and periodicals is never permitted without our written authorization, and that the second use of such art work is not permitted anywhere else in the world prior to American publication.

Although all art work is purchased outright, and for reproduction in the Curtis publications, The Curtis Publishing Company will, on request, reassign to the artist the American book rights and the foreign rights under the following conditions: It shall be understood that under no circumstances may covers, illustrations or cartoons be reproduced as advertisements or in connection with advertising material, or for any commercial or business promotion purpose. Art work may be used on calendars only when the calendar is an "art calendar," carries no advertising, promotional or commercial text, and only with our specific consent. Where illustrations are used on book jackets it is understood that such book jackets may not be used in connection with advertising or be reproduced in advertisements.

THE CURTIS PUBLISHING COMPANY

EXHIBIT A

D 000978

THE CURTIS PUBLISHING COMPANY
INDEPENDENCE SQUARE
PHILADELPHIA 5

July 9, 1957

Mr. Norman Rockwell

Stockbridge,

Mass.

*We inclose our check*

for Four thousand five hundred dollars *in payment for your drawings, as follows:*

Cover Illustration: Minus A Front Tooth.

### IMPORTANT

This check is offered and accepted with the understanding that The Curtis Publishing Company buys *all* rights in covers, illustrations and cartoons appearing in its publications. It should be clearly understood by artists that, as the company retains all North American (including Canadian) serial rights, the second use of covers, cartoons and illustrations in North American (including Canadian) newspapers and periodicals is never permitted without our written authorization, and that the second use of such art work is not permitted anywhere else in the world prior to American publication.

Although all art work is purchased outright, and for reproduction in the Curtis publications, The Curtis Publishing Company will, on request, reassign to the artist the American book rights and the foreign rights under the following conditions: It shall be understood that under no circumstances may covers, illustrations or cartoons be reproduced as advertisements or in connection with advertising material, or for any commercial or business promotion purpose. Art work may be used on calendars only when the calendar is an "art calendar," carries no advertising, promotional or commercial text, and only with our specific consent. Where illustrations are used on book jackets it is understood that such book jackets may not be used in connection with advertising or be reproduced in advertisements.

*THE CURTIS PUBLISHING COMPANY*

EXHIBIT B

D 000979