**H**
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut.

Philip ARMETTA et al.,
v.
WHEELABRATOR TECHNOLOGIES, INC. et al.

No. X01CV980154590.

June 26, 2001.

MEMORANDUM OF DECISION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

HODGSON.

*1 The defendants, Wheelabrator Technologies, Inc. and its subsidiary, Riley Energy Systems of Lisbon Corporation, Inc. ("RESOL"), have moved for summary judgment on all counts of the revised complaint dated November 30, 2000, filed by plaintiff Philip C. Armetta and entities in which Armetta has an interest: Lisbon Resource Recovery L.P., Regional Landfill Development of Lisbon, Inc. ("Regional Landfill Development"), Regional Disposal System of Lisbon, Inc. and Lisbon Industrial Park, L.P.

The plaintiffs allege that in 1990 Armetta and Lisbon Resource Recovery, L.P. entered into a contract with RESOL, a subsidiary of defendant Wheelabrator Technologies, Inc., concerning development of a solid waste resource recovery facility and an ash residue landfill, both to be located in Lisbon, Connecticut. The plaintiffs allege that this agreement was amended in 1993. They further allege that a site lease entered into between the same parties in 1990 was likewise amended in 1993. According to the plaintiffs, the agreements required the defendants to use the Lisbon ash landfill for the residue generated at the Lisbon resource recovery facility when the Lisbon landfill received the necessary permits, including permits from the state Department of Environmental Protection ("DEP"). The plaintiffs allege that while they were pursuing the permits for the Lisbon landfill, a Wheelabrator affiliate, Wheelabrator Putnam, Inc., developed an ash residue landfill in Putnam, Connecticut, and that the development of this alternative disposal site doomed the plaintiffs' application for the Lisbon landfill by removing the need for it. The plaintiffs make the following claims, and the defendants assert the special defenses stated after each claim:

Count One (Breach of Contract) alleges that RESOL and Wheelabrator breached the express terms of the Resource Recovery Agreement as well as the implied covenant of good faith and fair dealing by preparing an application to the DEP for approval of an ash landfill in Putnam while the plaintiffs were pursuing approval for a landfill in Lisbon and listing the Lisbon resource recovery facility as a source of ash for that landfill, all without notifying the plaintiffs of such applications.

The first special defense as to Count One claims that any conduct alleged to have occurred before July 31, 1995, is barred by the three-year statute of limitation set forth in Conn.Gen.Stat. § 52-577.

Count Two (Breach of Fiduciary Duty) alleges that the defendants that were parties to the two written agreements breached fiduciary duties to the plaintiffs by failing to disclose their plan to develop a landfill in Putnam and other information.

The first special defense as to Count Two claims that the Resource Recovery Agreement provides at Section 16 that "neither (party) has a fiduciary relationship to the other of any kind" and no fiduciary duty can therefore be construed;

The second special defense as to Count Two claims that the claim of nondisclosure of development of the Putnam landfill is barred by the statute of limitation.

*2 Count Three (Conversion) alleges that in 1994 defendant RESOL converted a volume of sand and gravel from the plaintiff's property without permission and without making payment.

The first special defense as to Count Three claims that the claim is barred by the three-year statute of limitation of Conn.Gen.Stat. § 52-577;

The second special defense as to Count Three invokes the defense of laches.

Count Four (Breach of Oral Contract) alleges that Wheelabrator Technologies, Inc. breached an oral agreement entered into on October 1, 1993, to "give Armetta an opportunity to bid on the hauling of solid waste collected in the Danbury area to the Lisbon resource recovery facility.

The first special defense as to Count Four invokes the statute of frauds, Conn.Gen.Stat. § 52-550(a)(5).

58151-1 (2/28/03)
01418-001
Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Count Five (Breach of Oral Agreement) alleges that Wheelabrator Technologies, Inc. breached an oral agreement that it or RESOL would give Armetta "the exclusive contract for hauling of ash waste produced in the Lisbon resource recovery facility to the ash disposal facility wherever it was located."

The first special defense as to Count Five invokes the statute of frauds, Conn.Gen.Stat. § 52-550(a)(5).

Count Six (Violation of CUTPA) alleges that the defendants violated the Connecticut Unfair Trade Practices Act (CUTPA), Conn.Gen.Stats. § 42-110a et seq., by failing to disclose its activities in developing the Putnam landfill and by withholding data requested in 1996 that was necessary to RLDLI's permit application for the Lisbon landfill.

The first special defense as to count Six claims that conduct that occurred before July 31, 1995 is barred by the three-year statute of limitation of Conn.Gen.Stat. § 42-110g(f).

Count Seven (unjust enrichment) alleges that the defendants were unjustly enriched by developing the Putnam landfill and by the plaintiffs' efforts in seeking approval of the Lisbon landfill.

The first special defense as to Count Seven claims that the plaintiffs failed to act with due diligence in seeking to obtain permits for the proposed ash landfill in Lisbon;

The second special defense as to Count Seven alleges breach of contract by plaintiffs;

The third special defense as to Count Seven claims that the plaintiffs failed to notify defendants of their objection to development of Putnam landfill;

The fourth special defense as to Count Seven claims that the plaintiff's abandonment of efforts to obtain permits relieved defendants of obligation to dispose of ash at proposed Lisbon landfill, pursuant to Section 2.1 of the Amended and Restated Project Site Lease and Agreement (Nov. 30, 2001).

As to counts one, two, six and seven, the defendants filed the following additional special defenses:

In the first special defense the defendants claim that they were ready, willing and able to abide by the terms of the contracts at issue and dispose of ash from the Lisbon plant at the Lisbon landfill.

In the second and third special defenses the defendants claim that because plaintiffs knew of and made no objection to defendants' development of Putnam landfill, defendants reasonably believed plaintiffs did not object, and plaintiffs are estopped and/or have waived any objections.

*3 In the fourth and fifth special defenses the defendants claim that equitable relief is barred by doctrine of unclean hands, as plaintiffs failed to make reasonable efforts to obtain permits for Lisbon landfill and committed laches.

Standard of review for Motion for Summary Judgment

Summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Practice Book [§ 17-49 (formerly § 384).]" Alvarez v. New Haven Register, Inc., 249 Conn. 709, 714 (1999), citing Nichols v. Lighthouse Restaurant, Inc., 246 Conn. 156, 163 (1998); Peerless Ins. Co. v. Gonzalez, 241 Conn. 476, 481, 697 A.2d 71 (1997). See Sherwood v. Danbury Hospital, 252 Conn. 193, 201 (2000); Rivera v. Double A Transportation, Inc., 248 Conn. 21, 24 (1999).

The party moving for summary judgment bears the burden of proving the absence of a dispute as to any material fact which, under applicable principles of substantive law, entitle him to a judgment as a matter of law; and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. Rivera v. Double A Transportation, Inc., supra, 248 Conn. 24. "To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact." Witt v. St. Vincent's Medical Center, 252 Conn. 363, 373 n. 7 (2000).

The Connecticut Supreme Court has approved the use of a motion for summary judgment to establish that a statutory defense, such as the expiration of the statute of limitation, bars the action. Rivera v. Double A Transportation, Inc., supra, 248 Conn. 21.

A party opposing summary judgment on the ground that there are genuine issues of material fact in dispute must "establish a factual predicate from which it can be determined, as a matter of law, that a genuine issue of material fact exists ... The presence ... of an alleged adverse claim is not sufficient to defeat a motion for summary judgment." (Internal citations omitted .) Wadia Enterprises, Inc. v. Hirschfeld, 224 Conn. 240, 247 (1992).

In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. The test is whether a party would be entitled to a directed verdict on the same facts. Sherwood v. Danbury Hospital, supra,

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

252 Conn. 201; *Serrano v. Burns,* 248 Conn. 419, 424 (1999); *Connell v. Colwell,* 214 Conn. 242, 246-47 (1990). In Connecticut, a directed verdict may be rendered only if, on the evidence viewed in the light most favorable to the nonmovant, the trier of fact could not reasonably reach any other conclusion than that embodied in the verdict as directed. *United Oil Co. v. Urban Redevelopment Commission,* 158 Conn. 364, 380 (1969); *Vuono v. Eldred,* 155 Conn. 704, 705 (1967).

*4 In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist. *Nolan v. Borkowski,* 206 Conn. 495, 500 (1998); *Telesco v. Telesco,* 187 Conn. 715, 718 (1982).

Undisputed Facts

The plaintiffs do not dispute that the contracts submitted by the movants in support of their motion are the contracts between the parties that are the source of the obligations claimed in the complaint. [FN1]

> FN1. The movants submitted these documents with an affidavit by their counsel averring that the documents were authentic. While counsel is not a proper witness, the plaintiffs' agreement on the record in open court that the documents appended are authentic cures the irregular method by which the movants presented them in connection with this motion.

On August 3, 1990, the plaintiff Armetta entities and defendant RESOL entered into a written Resource Recovery Agreement (Exhibit E) in which each assumed obligations as part of a plan by which a resource recovery facility would be built in Lisbon and an ash disposal landfill to be used as a repository for the ash generated by the facility would be developed by the Armetta entities across Route 395 from the facility. The 1990 agreement states that the parties were contemporaneously entering into a lease and easements. (Exhibit E, pp. 2-3.) The agreement provides that if plaintiff Resource Landfill Development of Lisbon, Inc. did not obtain all permits necessary for operation of the Lisbon landfill by August 3, 1993, then RESOL could make other arrangements for disposal of the ash from the facility. (Exhibit E, p. 18.) The agreement provides at paragraph 16, titled "Nature of Relationship," that the parties

> agree that nothing in this Agreement or in the lease creates any agency, partnership or joint venture relationship between them, that neither [RESOL] nor the Armetta Entities have authority to make any commitments that are binding upon the other with respect to the Project, and that neither has a fiduciary relationship to the other of any kind.

(Exhibit E, p. 20.)

On October 12, 1993, the parties to the 1990 agreement described above signed an amendment that gives the Armetta entities until 2003 to obtain the permits required to develop the Lisbon landfill (See Ex. H, 2.1(b) and "Landfill date" definition, that is, ten years from the closing date of 1993). An addendum to the 1993 amendment states that payment of a $1.4 million landfill development fee to Philip Armetta is conditioned on his company's securing approval of all necessary permits for its construction and operation, including approval by the Department of Environmental Protection ("DEP"). (Exhibit I, p. 2.)

The 1993 amendment provided that any terms of the 1990 agreements not amended in the 1993 agreements "shall remain otherwise unaffected and in full force and effect." (Exhibit I, p. 1.) Paragraph 16 of the 1990 agreement, quoted above, was not altered in any of the 1993 amendments.

In their brief in opposition to the motion for summary judgment, at page 6, the plaintiffs concede that as part of the 1993 modifications, "Wheelabrator freed itself from restrictions on development of other ash landfills. Def. Mem. at 9, Para. 15. In exchange for the lifting of this restriction, Wheelabrator agreed to provide Armetta additional time (to 2003) to obtain permits for the ash landfill." (Plaintiffs' Memo. In Opposition, p. 6.)

*5 The Armetta entities submitted tests and reports to the DEP, which informed Armetta by a letter dated January 19, 1995, that the Lisbon site was unlikely to be approved as an ash landfill site. (Exhibit N.) The DEP stated that it had identified other suitable sites and that "[g]iven the concerns of the Water Bureau, it is unlikely that a permit could be issued for this facility." (Exhibit N.)

The Armetta entities have not, to date, received the DEP permits necessary for development and operation of an ash landfill on the Lisbon site.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

By December 1995, defendant Wheelabrator began resource recovery operations at the Lisbon facility and needed to dispose of the ash generated. Since the Lisbon landfill was not available, Wheelabrator deposited the ash first at other locations and then at a landfill in Putnam, after applying for a landfill permit for that landfill in June 1996. In connection with its own permit applications for the Putnam landfill, RESOL represented to the DEP by a letter dated July 24, 1996, that "[i]t is still our intent to provide long-term disposal of the facility's ash residue at the on-site monofill located on the northern side of route 395. (The permitting process for this monofill is still ongoing.)" (Exhibit D. to Dougherty affidavit.) RESOL made the same representation in a letter to the DEP dated October 29, 1997. (Exhibit E to Dougherty affidavit.)

Philip Armetta states in his brief in opposition to the motion for summary judgment, at page 11, that "[s]ometime in 1993, Armetta became dimly aware of Wheelabrator's pursuit of an ash landfill permit application in Putnam, through a combination of press accounts, DEP reports and word of mouth." Though he takes a different view in an affidavit concerning the degree of his awareness that the defendants were seeking approval of an ash landfill in Putnam, the undisputed facts are that such applications are a matter of public record and the Putnam landfill application was copiously reported upon in the press.

Claims of Breach of Contract

In the First Count of the revised complaint, the plaintiffs allege that RESOL breached its obligations under the contract and breached the implied covenant of good faith and fair dealing by developing the Putnam landfill as a repository for ash from the Lisbon resource recovery facility that was intended as a source of ash for the proposed Lisbon landfill.

The plaintiffs correctly observe that summary judgment is unavailable where there are disputed issues of material fact. Practice Book § 17-49. Though they claim in their brief that disputed factual issues exist, with regard to their claims of breach of express and implied contract terms, the issue they actually identify as a factual dispute is as follows: "[w]hat Armetta does dispute is Wheelabrator's contention that it had the right to develop the Putnam landfill at the expense of the Lisbon landfill." (Brief in Opposition, June 1, 2001, p. 24.) This issue is a legal issue, not a factual one. The plaintiffs essentially claim that despite the 1993 amendment that freed the defendants to develop other landfill sites to meet the disposal needs of the Lisbon resource recovery facility, the contract prohibited doing so if development had an impact on the development of the Lisbon facility.

*6 Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact ... [w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law ... When only one interpretation of a contract is possible, the court need not look outside the four corners of the contract ... Contract language is unambiguous when it has a definite and precise meaning about which there is no reasonable basis for a difference of opinion ... *Levine v. Advest, Inc.,* 224 Conn. 732, 746 ... (1998) ... A court will not torture words to import ambiguity, and words do not become ambiguous simply because lawyers or laymen contend for different meanings.
(Internal citations and quotation marks omitted.) *Rund v. Melillo,* 63 Conn.App. 216, 220 (2001).

The plaintiffs assert that their claim that the defendants acted in bad faith in the manner in which they pursued other landfills constitutes a factual issue. Since the written agreements allowed defendants to develop and use other landfills, neither the manner of their doing so nor the claimed effect on the progress of the application for the Lisbon landfill is actionable, so that motives and methods of performing acts allowed under the contract do not constitute facts that are *material.* The contracts do not obligate the defendants to restrict their pursuit of alternate landfills, and the plaintiffs thus base a claim on a term not stated in the contract.

The plaintiffs similarly claim that the facts are in dispute as to whether the defendants' development of the Putnam landfill caused the application for the Lisbon landfill to experience difficulty. Again, the reason for the plaintiffs' failure to achieve approval is not a material issue if the agreements allowed the defendants to develop other landfills for the ash that was to have been sent to the proposed Lisbon landfill.

In their brief and at oral argument, the plaintiffs conceded that the 1993 amendment to the 1990 Resource Recovery Agreement permitted RESOL to seek and develop other landfills at which the ash from the Lisbon resource recovery facility could be deposited, since the plaintiffs' difficulties in obtaining all necessary permits were such that it was clear that the Lisbon landfill would not be available at the time

the Lisbon facility needed a place to dispose of ash generated by its processes. The plaintiffs assert that their claim is not that the defendants breached the contract by developing an alternative landfill, but that the manner in which the defendants did so disadvantaged the prospects of the application for the Lisbon landfill.

Essentially, the plaintiffs ask this court to construe terms into their contract that are not contained in it, either by interpreting the omission of the restriction on alternative landfills as somehow retaining obligations not actually stated in the amended contract, or by finding that an implied obligation of good faith and fair dealing retained in the 1993 amendment a prohibition against some means of developing alternative landfills, even though a purpose of the amendment negotiated was to eliminate that restriction. Such a construction defies the definitive language of the contract and its amendment. The plaintiffs assert that the defendants should not have truthfully stated in their application for the Putnam landfill that it would receive ash from the Lisbon facility, because such a statement of act might lead the DEP to conclude that the proposed Lisbon landfill would not be needed. The contract cannot be interpreted to require the defendants to conceal facts requested by DEP or other permitting authorities.

*7 A covenant cannot be implied that negates the actual terms of a written contract. _Magnan v. Anaconda Industries, Inc._, 193 Conn. 558, 566 (1984). "[A]n implied covenant of good faith and fair dealing ... cannot be used to alter the terms of a written contract between parties and create additional obligations which were not mutually agreed to." _Foley v. Huntington Co._, 42 Conn .App. 712, 723, cert. denied, 239 Conn. 931 (1996). The implied covenant of good faith and fair dealing "is a rule of construction designed to fulfill the reasonable expectation of the contracting parties as they presumably intended. The principle, therefore, cannot be applied to achieve a result contrary to clearly expressed terms of a contract, unless, possibly, those terms are contrary to public policy." _Southridge Associates LLC v. Garofalo_, 53 Conn .App. 11, 16, cert. denied, 249 Conn. 919 (1999).

The undisputed material facts establish that the defendants did not breach any explicit or implied obligation under their agreements with the plaintiffs.

Claim of Breach of Fiduciary Obligations

The plaintiffs assert that the existence of a fiduciary relationship is an issue of fact. That statement is true in the absence of a contract specifying whether fiduciary responsibilities have or have not been assumed. See _Hi-Ho Tower, Inc. v. Com-Tronics, Inc._ 255 Conn. 20 (2000); _Dunham v. Dunham_, 204 Conn. 303 (1987). [FN2] In the case before this court, the parties explicitly provided in their 1990 contract (Exhibit E, para. 16) that neither side assumed fiduciary duties toward the other. Where, as here, the parties are equally sophisticated developers who were represented by separate counsel, there is no justification for applying common law rules concerning the existence of fiduciary duties where the parties have explicitly contracted that no fiduciary relationship exists and have contractually limited their obligations to one another. The plaintiffs have identified no case in which parties of equal bargaining power who have explicitly freed each other from any fiduciary status or responsibilities have been held to be required by common law to fulfill fiduciary responsibilities. Federal trial courts have ruled that "an arm's length contract between sophisticated parties ... will not be held to entail fiduciary duties absent some express agreement to that effect." _Calvin Klein Trademark Trust v. Wachner_, 129 F.Sup.2d 248, 250 (S.D.N.Y.2001). A contractual acknowledgment of the absence of a fiduciary relationship was found in _Cousins Systems, Inc. v. McKinney_, 59 F.Sup.2d 816, 820 (E.D.Wis.1999) to defeat imposition of fiduciary duties on a franchisor for the benefit of a franchisee.

FN2. In _Konover Development Corp. v. Zeller_, 228 Conn. 206, 218-19 (1994), the Connecticut Supreme Court considered the extent of fiduciary responsibilities of a general partner toward a limited partner. In that case, however, the parties agreed that a fiduciary relationship existed.

There may be instances in which form language in a contract between parties of unequal bargaining power and sophistication negating fiduciary status is found to be ineffective; however, there is no reason in the case before this court to relieve the plaintiffs of the duty they undertook in the contracts at issue not to regard the defendants as fiduciaries or expect them to act as such in the transactions that were the subject of that agreement.

*8 The plaintiffs urge this court to ignore the express provisions of their contract and impose a common

law duty on the defendants to act as fiduciaries toward the plaintiffs. Where, as here, the parties have bargained for the scope of their duties to each other and have specifically negated assumption of fiduciary duties, the terms of the contract apply and will not be supplanted by common law principles that might apply in the absence of such explicit terms.

Summary judgment shall enter on the claims made in Count Two.

Claims of Breach of Oral Contract

With regard to the claims of breach of oral contracts (Counts Four and Five), the plaintiffs allege that "[o]n or about October 1, 1993, at the time of the closing of financing for the resource recovery project," Wheelabrator orally agreed with Armetta that "RESOL or Wheelabrator would give Armetta an opportunity to bid on the hauling of solid waste collected in the Danbury area to the Lisbon resource recovery facility." (Count Four, para. 35.) The plaintiffs further allege that the defendants "have breached that agreement by never giving Armetta an opportunity to bid on the Danbury-to-Lisbon haul." (Count Four, para. 37.)

In Count Five of the complaint, the plaintiffs allege that "[o]n or about October 1, 1993, at the time of the closing of financing for the resource recovery project," the defendants agreed to give Armetta "the exclusive contract for hauling of ash waste produced in the Lisbon resource recovery facility to the ash disposal facility wherever it was located." The defendants assert that they are entitled to summary judgment on these claims both because they could not be performed within a year and are therefore unenforceable under the Statute of Frauds, Conn.Gen.Stat. 52-550(a)(5), and because they represent an attempt to amend orally the written contracts between the parties, despite a term in the written agreement stating that the written agreement constitutes the entire agreement between the parties "exclusive of all prior or contemporaneous understandings, arrangements or commitments, all of which, whether oral or written have been merged herein." (Exhibit E, para 26.)

This integration clause, which was set forth in the 1990 agreement, was incorporated into the October 12, 1993 Addendum Number 1 (Exhibit I) by virtue of the fact that the amendment recites that with the exception of agreements specifically set forth in the addendum, "[a]ll other terms and provisions of said Resource Recovery Agreement shall remain otherwise unaffected and in full force and effect." Paragraph 26, the integration clause, was one of such unaffected terms. Since neither an agreement to give the plaintiffs an opportunity to bid on waste hauled to the facility from Danbury nor to grant the plaintiffs an exclusive right to haul the ash is set forth in the written agreements, and since those written agreements explicitly negate the existence of any other agreements or arrangements, the undisputed facts establish that the defendants are entitled to judgment on the claim of breach of oral agreements since the alleged terms of those agreements do not appear in the written contract that the plaintiffs agreed contained all of their agreements with the defendants.

*9 Because the plaintiffs agreed in the written agreements they signed in 1990 and on October 12, 1993, that these written agreements contained all of their agreements entered into with the defendants, the defendants are entitled to summary judgment on claims of oral contracts alleged to have been entered into contemporaneously with the written amendment.

Conversion

In the Third Count of their complaint, the plaintiffs allege that on an unspecified date in 1994, defendant RESOL removed a substantial volume of sand and gravel from the plaintiff's property without the permission Lisbon Industrial Park, L.P. This action was commenced in 1998, and the defendants seek summary judgment on their defense that the claim was not brought within the three-year statute of limitation provided by Conn.Gen.Stat. § 52-577. The plaintiffs' only opposition is the observation that the facts are in dispute as to when Philip Armetta became aware that the road on the property had been built using sand and gravel for which no permission had been given. The existence of disputed facts concerning the date upon which Armetta became aware of the facts alleged to constitute a conversion of the sand and gravel does not, however, constitute a dispute material to the legal issue. The three-year statute of limitation provided in Conn.Gen.Stat. § 52-577 runs from the occurrence of the tort, not from the discovery of its commission: "No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of." Occurrence, not discovery, governs the application of this deadline. *Fichera v. Mine Hill Corporation*, 207 Conn. 204, 212 (1988); *S.M.S. Textile Mills, Inc. v. Brown, Jacobson, Tillinghast, Lahan & King, P.C.*, 32 Conn.App. 786, 791, cert. denied, 228 Conn. 903 (1993). The plaintiffs have not pleaded any tolling

doctrine with regard to the defendants' statute of limitation defense. The undisputed material facts are that the tort at issue in this count is alleged to have occurred in 1994, more than three years before the commencement of suit.

CUTPA

At Count Six of their complaint, the plaintiffs allege that the defendants violated the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn.Gen.Stat. § 42-110a et seq. by failing to give the plaintiffs notice that the defendants were applying to the DEP for authorization to develop an ash landfill in Putnam, by failing to advise the plaintiffs that their estimation of the need for a landfill in Lisbon had changed, and by "with [holding] from [Regional Landfill Development] data concerning the ash residue generated by RESOL's resource recovery facility" allegedly requested by plaintiff Regional Landfill Development in 1996 for use in preparing that entity's application to the DEP for the Lisbon landfill.

Connecticut General Statutes § 42-110b(b) provides that in interpreting CUTPA, Connecticut's courts shall be guided by interpretations of the Federal Trade Commission and the federal courts to Section 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1), as amended.

*10 The Connecticut Supreme Court has adopted the so-called "cigarette rule" stated in FTC v. Sperry & Hutchinson Co., 405 U.S. 233, 244-45 n. 5, 92 S.Ct. 898, 31 L.Ed.2d 170 (1972): "whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise--whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other businessmen]." Williams Ford, Inc. v. Hartford Courant Co., 232 Conn. 559, 591 (1995); quoting Conaway v. Prestia, 191 Conn. 484, 492-93 (1993).

As the defendants point out, they, like the plaintiffs, had a right to file and pursue applications to develop ash landfills in Connecticut, and they had a right to supply information about their activities to others at their own discretion.

Contrary to the plaintiffs' contentions, the written contracts did not preclude the defendants from filing applications to develop other ash landfills to accept the ash to be generated at the Lisbon facility, and, indeed, the contracts specifically acknowledged that alternate facilities may be needed. An action contemplated by the contract between the parties can hardly be characterized as unfair, deceptive or "immoral, unethical, oppressive, unscrupulous," or offensive to public policy. The plaintiffs are endeavoring to obtain obligations under CUTPA that are not stated in their contracts with the defendants, and which are not required of the defendants by any provision of law.

The plaintiffs' claim that the defendants deprived them of information needed for the application to the DEP for the Lisbon landfill is, by contrast, a matter not subject to contractual provisions between the parties. The movants have not shown what the facts are with regard to that claim, though they have observed that if it occurred more than three years before suit was commenced, it is beyond the statute of limitation applicable to claims of CUTPA violations pursuant to Conn.Gen.Stat. § 42-110g(f). It cannot be determined from the allegations of the complaint or from any undisputed facts submitted in connection with this motion when the claimed refusal to provide information occurred. The motion for summary judgment is denied as to this single part of the CUTPA claim.

Unjust Enrichment

In the seventh count of their revised complaint, the plaintiffs allege that all of the allegations of the prior counts constitute unjust enrichment of the defendants, that is, that the defendants were unjustly enriched by the plaintiffs' efforts to develop a landfill in Lisbon while the defendants developed a landfill in Putnam, by breach of the alleged oral contracts, by alleged conversion of sand and gravel, and by a violation of CUTPA. A cause of action for unjust enrichment is not, in fact, a catchall way of characterizing other kinds of claims, but is a distinct cause of action with distinct elements.

*11 In order to prevail on a claim of unjust enrichment, a party must prove (1) that the other party was benefited, (2) that he unjustly did not pay for the benefit, and (3) that the failure of payment was to the plaintiff's detriment. Hartford Whalers Hockey Club v. Uniroyal Goodrich Tire Co., 231 Conn. 276, 282 (1994). The plaintiffs have not alleged facts that support such a cause of action but rather use the phrase "unjust enrichment" as a description of their contentions that, despite the

provisions of the 1993 amendment, the defendants somehow were not entitled to develop another landfill and were required to pay the plaintiffs for efforts that did not achieve approval of the Lisbon landfill.

The facts are not in dispute as to the limits of the obligations assumed by the defendants in their contracts with the plaintiffs and the entitlement of the plaintiffs to a fee only if they obtained all necessary permits for the Lisbon landfill. (Exhibit I.) The material facts that are not in dispute are that the contracts did not prohibit the defendants from developing alternate solutions to the need for a repository for the ash generated by the Lisbon facility and that the plaintiff did not succeed in obtaining approval for a landfill in Lisbon by the time the defendants needed a repository. As a matter of law, the defendants' benefiting from their own efforts to obtain a landfill cannot be said to unjustly benefit them. The plaintiffs have not alleged that they played any role in creating the Putnam landfill for use by the defendants or performed any services to the defendant under circumstances entitling them to compensation.

It is undisputed that the plaintiffs' efforts to develop the proposed Lisbon landfill did not come to fruition and that their entitlement to compensation was contingent on the approval of the Lisbon landfill, which never occurred. The undisputed facts show that though these efforts certainly cost the plaintiff effort, no fruits of that effort redounded to the defendants. As a matter of law, upon the undisputed facts that are material to the elements of this cause of action, the defendants are not liable for unjust enrichment for any of the actions that are also claimed to constitute breaches of written or oral agreements. With regard to the claim that the defendants took and did not pay for sand and gravel from the plaintiffs' property, however, the plaintiff has pleaded a claim for unjust enrichment and the undisputed facts do not establish that the defendants had no duty to pay for such materials. The motion is denied with regard to that claim.

## Conclusion

The motion for summary judgment is granted as to all counts except that portion of Count Six in which the plaintiffs allege that the defendants withheld from them information necessary to pursue their applications for approval of the Lisbon ash landfill and that portion of Count Seven in which the plaintiffs allege that the defendants were unjustly enriched by their use of sand and gravel from plaintiffs' property. Trial of those claims and of the defendants' counterclaim will commence on July 10, 2001.

2001 WL 822434 (Conn.Super.)

END OF DOCUMENT