H

Supreme Court, Appellate Division, First Department, New York.

Alain WERTHEIMER, Plaintiff-Appellant,
v.
CIRKER'S HAYES STORAGE WAREHOUSE, INC., Defendant,
and
Pascal Bodhisattva, Inc., etc., Defendant-Respondent.
Holocaust Art Restitution Project, Amicus Curiae.
[And A Third-Party Action].

Dec. 17, 2002.

Grandchild brought replevin action against art gallery, seeking to recover a painting formerly owned by grandfather that was allegedly misappropriated and sold by the person to whom the family entrusted it when they fled the Nazi occupation of France. The Supreme Court, New York County, Leland DeGrasse, J., granted art gallery's cross-motion for summary judgment dismissing the complaint, and grandchild appealed. The Supreme Court, Appellate Division, held that: (1) the complaint was properly dismissed on grounds of laches, and (2) doctrine of unclean hands did not bar art gallery's assertion of the laches defense.

Affirmed.

West Headnotes

[1] Replevin ⇐20
335k20 Most Cited Cases

Doctrine of laches barred replevin action brought by grandchild against art gallery, seeking to recover a painting formerly owned by grandfather that was allegedly misappropriated and sold by the person to whom the family entrusted it when they fled the Nazi occupation of France; for nearly half a century, the family failed to take any steps to recover the painting, they made no inquiries based on a New York gallery's advertisement of the painting for sale in a prominent art journal, even though grandfather then lived in New York, and family's lack of due diligence substantially prejudiced defendant art gallery by making it virtually impossible for it to prove that any of its predecessors in interest acquired good title.

[2] Equity ⇐65(2)
150k65(2) Most Cited Cases

Doctrine of unclean hands did not bar art gallery's assertion of laches defense in replevin action brought by grandchild seeking to recover painting formerly owned by grandfather that was allegedly misappropriated and sold by the person to whom the family entrusted it when they fled the Nazi occupation of France; gallery's alleged inequitable conduct, its alleged failure to make reasonable inquiry into the background of the painting prior to purchasing it, and its alleged creation and use of a false provenance as an aid to attempts to resell the painting, did not cause any prejudice to grandchild.
*296 Nicole A. Anderson, for Plaintiff-Appellant.

Peter R. Stern, for Defendant-Respondent.

John J. Bryne, Jr., for Amicus Curiae.

WILLIAMS, P.J., ROSENBERGER, RUBIN, FRIEDMAN, and GONZALEZ, JJ.

**1 Order, Supreme Court, New York County (Leland DeGrasse, J.), entered October 2, 2001, which, insofar as appealed from as limited by the briefs, granted the cross motion of defendant Pascal Bodhisattva, Inc., d/b/a Pascal de Sarthe Fine Art, for summary judgment dismissing the complaint as barred by the doctrine of laches, unanimously affirmed, without costs.

[1][2] In this replevin action, plaintiff seeks to recover from defendant art gallery (de Sarthe) a painting formerly owned by plaintiff's grandfather that was allegedly misappropriated and sold by the person (Ehrlich) to whom the Wertheimer family entrusted it when they fled the Nazi occupation of France. Although the Wertheimers had the painting included on a list of stolen artworks published by the French government in 1947, the record indicates that plaintiff's grandfather abandoned the French legal proceeding he commenced against Ehrlich after the war. The judgment entered against Ehrlich in that proceeding in 1947 (in the grandfather's absence) states that the grandfather had been compensated by third parties for certain unspecified property Ehrlich had misappropriated. This suggests the possibility that the grandfather may have accepted an alternative remedy as compensation for the loss of the subject painting, although whether this was the case can no longer be determined with any degree of certainty, the documentary record being very scant and all

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

persons with direct knowledge of the relevant matters apparently having died long ago. In 1960, plaintiff's grandfather withdrew any claim *297 against the German government based on the loss of the painting.

The uncontradicted evidence establishes that, for nearly half a century prior to the commencement of this action in 2000, the Wertheimers failed to take any steps to recover the painting. In this regard, we note that the family did not make any inquiries, either directly or through an agent, based on a New York gallery's advertisement of the painting for sale in a prominent art journal in 1951, notwithstanding that plaintiff's grandfather then lived in New York. Significantly, the New York gallery did not sell the painting until 1954, and even after the sale the gallery could have identified the buyer to an inquirer, as it voluntarily did at de Sarthe's request nearly 50 years later.

Because the Wertheimer family's lack of due diligence in seeking the return of the painting, as described above, substantially prejudiced de Sarthe by making it virtually impossible for de Sarthe to prove that any of its predecessors in interest acquired good title, the IAS court properly granted de Sarthe's motion for summary judgment dismissing the complaint on grounds of laches (see *Greek Orthodox Patriarchate of Jerusalem v. Christie's Inc.*, 1999 WL 673347, *10-11, 1999 U.S. Dist LEXIS 13257, *33 [S.D.N.Y., Aug. 30, 1999] ). The doctrine of unclean hands does not bar de Sarthe's assertion of the laches defense, since de Sarthe's alleged inequitable conduct--its alleged failure to make reasonable inquiry into the background of the painting prior to purchasing it in 1999, and its alleged creation and use of a false provenance as an aid to attempts to resell the painting--did not cause any prejudice to plaintiff (see e.g. *National Distillers & Chem. Corp. v. Seyopp Corp.*, 17 N.Y.2d 12, 15-16, 267 N.Y.S.2d 193, 214 N.E.2d 361; *Weiss v. Mayflower Doughnut Corp.*, 1 N.Y.2d 310, 316, 152 N.Y.S.2d 471, 135 N.E.2d 208; *Tierno v. Puglisi*, 279 A.D.2d 836, 838-839, 719 N.Y.S.2d 350; *390 West End Assocs. v. Baron*, 274 A.D.2d 330, 332, 711 N.Y.S.2d 176; *Whalen v. Gerzof*, 206 A.D.2d 688, 691, 615 N.Y.S.2d 465, lv. denied 84 N.Y.2d 809, 621 N.Y.S.2d 518, 645 N.E.2d 1218; *Higgins v. Normile*, 130 A.D.2d 828, 829, 515 N.Y.S.2d 148). Since there is no relevant difference between the law of laches as it exists in New York and in Arizona, we need not reach plaintiff's contention that the IAS court erred in applying Arizona, rather than New York, law (see *Portanova v. Trump Taj Mahal Assocs.*, 270 A.D.2d 757, 759-760, 704 N.Y.S.2d 380, lv. denied 95 N.Y.2d 765, 716 N.Y.S.2d 39, 739 N.E.2d 295).

**2 We have reviewed plaintiff's remaining contentions and find them unavailing.

752 N.Y.S.2d 295, 2002 WL 31819634 (N.Y.A.D. 1 Dept.), 2002 N.Y. Slip Op. 09343

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works