**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**
**Bridgeport**

| | |
|---|---|
| STUART & SONS, L.P., | : |
| THE ESTATE OF KENNETH J. STUART | : |
| THE KENNETH J. STUART LIVING TRUST | : |
| KENNETH J. STUART JR. | : |
| WILLIAM A. STUART, M.D. | : |
| JONATHAN STUART | : |
| *Plaintiffs,* | : |
| | : |
| | : |
| - against - | : |
| | :    Case No. 301 CV 1580 AHN |
| THE CURTIS PUBLISHING COMPANY, INC. | : |
| THE SATURDAY EVENING POST SOCIETY, A | : |
| DIVISION OF THE BENJAMIN FRANKLIN | : |
| LITERARY AND MEDICAL SOCIETY, and THE | : |
| BENJAMIN FRANKLIN LITERARY AND | : |
| MEDICAL SOCIETY, INC. | : |
| | : |
| *Defendants* | :    June 13, 2005 |

**DECLARATION OF SANDRA J. AKOURY IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS**

I, SANDRA J. AKOURY, declare as follows:

1.    I am an attorney admitted to the bar in the State of Connecticut and the United States District Court, District of Connecticut.

2.    I am a solo practitioner representing Plaintiffs William A. Stuart, M.D. and Jonathan Stuart in this action, both of whom are sons of Kenneth J. Stuart Sr. ("Mr. Stuart Sr.").

1

3.    Kenneth J. Stuart Jr., also a son of Mr. Stuart Sr., is a plaintiff in this action and has appeared *pro se*.

4.    I respectfully submit this declaration in support of Plaintiffs' Motion for Judgment on the Pleadings, pursuant to Fed. R. Civ. P. 12(c), against the Defendants, The Curtis Publishing Company, Inc. ("Curtis"), The Saturday Evening Post Society, a Division of the Benjamin Franklin Literary and Medical Society, and the Benjamin Franklin Literary and Medical Society (collectively, "Defendants"). All Plaintiffs concur in this Motion.

**Summary of the Case**

5.    This case concerns the Stuart family's ownership of three original oil paintings created by Norman Rockwell ("Rockwell") in the 1940's and 1950's. The paintings are entitled *The Gossips*, *Saying Grace*, and *Walking to Church* ("Paintings"). Reproductions of the Paintings appeared on the covers of *The Saturday Evening Post* ("*Post*") in 1948, 1951 and 1953, respectively.

6.    Plaintiffs assert that shortly after reproductions of the Paintings appeared on *Post* covers, the Paintings were given by the *Post* back to Norman Rockwell, who then presented them at various times to Mr. Stuart Sr., who was the art director of the Post from 1944 to 1962.

7.    At various times, Rockwell described Mr. Stuart Sr. as "a great impresario" and "a real friend", and to whom Rockwell expressed his "undying gratitude." (See Exhs. D, E and F hereto.)

8.    As demonstrated by the documents annexed hereto, the Stuart family's ownership of the Paintings has been a matter of public record for decades; publications concerning Rockwell's work explicitly list the Stuarts as owners of the Paintings, at least as early as 1970.

9.    The Defendants had actual knowledge of certain of the publications listing the Stuarts as owners of the Paintings, as demonstrated in several documents contained in the Defendants' own files.

10.    The Defendants had actual knowledge that the Stuart family possessed *Saying Grace* and other Rockwells in or before 1985, as a result of testimony given by their counsel, Philip R. Strubing.

11.    On May 13, 1986, the Defendants contacted Mr. Stuart Sr. by letter, in which they specifically acknowledge that Mr. Stuart Sr. possessed *Saying Grace*.

12.    On June 2, 1986, Mr. Stuart Sr.'s counsel responded to the Defendants, by Certified Mail, stating not only that Mr. Stuart Sr. owned *Saying Grace*, but also giving the approximate date and manner in which Mr. Stuart Sr. received that painting, with the full knowledge of Curtis.

13.    Despite this exchange of correspondence, and the publicly available information attributing ownership of the Paintings to the Stuart family, the Defendants continually failed to assert any claim to the Paintings until 2001.

3

**Plaintiffs' Motion**

14.    Plaintiffs are entitled to a judgment declaring that the Stuart family is the owner of the three Paintings.  As demonstrated in the numerous exhibits hereto and the accompanying memorandum of law, the Stuart family has possessed the Paintings and held themselves out as their owners for decades.  In contrast, Defendants have repeatedly failed to assert a claim to the Paintings, or to even object in any manner to the Stuart family's public and private claims of ownership.

15.    The Defendants have counterclaimed in this lawsuit seeking a Declaratory Judgment that they are the owner of the Paintings.  However, as is clear from the law set forth in the Plaintiffs' accompanying memorandum of law, the Defendants' counterclaims are barred by the statute of limitations because they waited decades beyond the applicable period in which the law allows for them to assert a claim of ownership as to the Paintings.

16.    The Defendants' claim is also barred by the doctrine of laches, because the Defendants waited an inordinately and inexcusably long period of time, almost 40 years after Mr. Stuart Sr. left the *Post*, and 15 years after the Defendants acknowledged in a letter to Mr. Stuart Sr. that they were aware of his possession of *Saying Grace*, to assert any claim of ownership.

17.    The Plaintiffs have been prejudiced by the Defendants' inexcusable delay in that they no longer have the benefit of live testimony from any single person with first-hand knowledge of the relevant events of the

4

1940's, 1950's and 1960's, since all of those individuals have died during the decades of Defendants' inaction.

**Relevant Documents**

18.    Attached hereto as Exhibit A is a true copy of Plaintiffs' Second Amended Complaint.

19.    Attached hereto as Exhibit B is a true copy of Defendants' Answer and Counterclaims.

20.    Attached hereto as Exhibit C is a true copy of Plaintiffs' Reply to Defendants' Counterclaims.

21.    Attached hereto as Exhibit D is a true copy of a letter, dated May 1, 1957, from Rockwell to Mr. Stuart Sr., in which Rockwell expressed his deep affection for Mr. Stuart Sr., as follows:

> I just want to put down in a letter what I have been feeling so long – and that is how wonderfully cooperative you have been.
>
> The encouragement and freedom you give me in my work shows what a great impresario you are.  It is great to feel your art editor is one hundred percent for you, and is a real friend.
>
> This may sound a bit flowery, but it is completely sincere, and I do want to express my thanks to you.
>
> Sincerely,
>
> *Norman*

22.     Attached hereto as Exhibit E is a true copy of a letter, dated May 19, 1959, from Rockwell to Mr. Stuart Sr., in which Rockwell stated:

I just have to put this in writing.

This whole amazing project of my so-called autobiography is all due one hundred percent to you.  It was your original conception, you have done all the negotiating, and furnished the initiative to carry it through.  Without your creative thinking and hard work it just wouldn't have been.

I have realized this all along but now I have to write it down.  Of course it is all unbelievably pleasing to me, and you have my undying gratitude.  You are a great impresario.

Sincerely,

*Norman*

23.     Attached hereto as Exhibit F is a true copy of an inscription, in which Rockwell expressed his gratitude to Mr. Stuart Sr., which was written in a copy of *The Norman Rockwell Album* (Doubleday 1961) that Rockwell gave to Mr. Stuart Sr. in 1961:

*Everything I am, everything*
*I have ever done, everything*
*I hope to be I owe to*

*Ken*

*lovingly,*
*Norman*
*Rockwell*

24.     Attached hereto as Exhibit G are true copies of excerpts of a book entitled *Norman Rockwell, Artist and Illustrator* ("*Artist and Illustrator*"),

published in 1970 by Harry N. Abrams, Inc. ("Abrams, Inc.").  *Artist and Illustrator* contains reproductions of *Saying Grace* and *Walking to Church* and explicitly lists the owner of those paintings as "Ken Stuart."

25.     Attached hereto as Exhibit H are true copies of two letters produced by the Defendants, dated March 26, 1971 and April 5, 1971. (Defendants' Bates Nos. 000178 and 000179.)  These letters demonstrate that Dr. Cory SerVaas relied "a great deal" on *Artist and Illustrator*, in which Mr. Stuart Sr. is identified as the owner of *Saying Grace* and *Walking to Church*. Thus, the Defendants had actual knowledge of the public claims of ownership asserted by the Stuart family as early as 1971.

26.     Attached hereto as Exhibit I is a true copy of a letter produced by the Defendants (Defendants' Bates No. 000312), dated September 22, 1970, from Jane Milligan of Curtis to Paul Anbinder of Abrams, Inc., acknowledging that in 1970, Curtis had the opportunity to, and did, review *Artist and Illustrator* prior to its publication.

27.     Attached hereto as Exhibit J are true copies of excerpts from *Norman Rockwell, A Sixty Year Retrospective*, published by Abrams, Inc. in 1972 ("*Sixty Year Retrospective*").  The preface of *Sixty Year Retrospective* states that, in 1968, *Saying Grace* was prominently displayed in the window of the Danenberg Gallery on Madison Avenue in New York City, and 40 other Rockwells were on display inside that gallery, in an exhibition that was "immensely popular and launched the Rockwell revival."  The *Sixty Year*

*Retrospective* also contains reproductions of *Saying Grace* and *Walking to Church* and explicitly lists the owners of those paintings as "Mr. and Mrs. Ken Stuart." It is noteworthy that at the time *Saying Grace* was displayed in the window of the Danenberg Gallery, Curtis had an office in New York City.

28.   Attached hereto as Exhibit K is a true copy of a letter dated September 20, 1971 from Paul Anbinder of Abrams, Inc. to Mrs. Cory SerVaas, produced by Defendants (Defendants' Bates Nos. 000181 – 000182). Mr. Anbinder's letter refers specifically to the Rockwell exhibition "organized by Rockwell's dealer in New York," for which *Sixty Year Retrospective* was produced. The letter clearly informed Dr. SerVaas of the impending exhibition tour.

29.   Attached hereto as Exhibit L is a true copy of a letter dated July 9, 1973 from Rodger Dean Duncan to William Gardiner of Curtis ("Gardiner"), requesting permission to reproduce certain Rockwell illustrations in conjunction with a half-hour television production. Attached to the letter is a list of the illustrations Duncan requested permission to use, along with the owner of each painting. The list clearly indicates that *Saying Grace* and *Walking to Church* are owned by Ken Stuart.

30.   Attached hereto as Exhibit M is a true copy of a letter dated July 25, 1973 from Gardiner to Rodger Dean Duncan, written in response to the letter attached hereto as Exhibit L. This letter clearly acknowledges receiving the list of Rockwell illustrations in which Mr. Stuart Sr. is named as the owner

of *Saying Grace* and *Walking to Church*. Thus, as of July 1973, there is no question that Curtis had actual knowledge of Mr. Stuart Sr.'s claim of ownership of the Paintings.

31.    Attached hereto as Exhibit N are true copies of a series of three letters, produced by Defendants (Defendants Bates Nos. 000228 – 000233), between Gardiner and Attorney Arthur Abelman ("Attorney Abelman"), who represented Rockwell. The letters clearly indicate that Dr. Cory SerVaas had seen a copy of *Sixty Year Retrospective*, in which ownership of *Saying Grace* and *Walking to Church* are explicitly attributed to "Mr. and Mrs. Ken Stuart."

32.    Attached hereto as Exhibit O is a true copy of a letter produced by Defendants (Defendants' Bates Nos. 000153 – 000154), dated October 18, 1976, from Nancy Luria Allen, Assistant Editor of *Book Digest* magazine, to Gardiner requesting permission to use certain Rockwell illustrations in conjunction with its planned publication of excerpts of *Norman Rockwell's America*. The letter includes a list of Rockwell illustrations *Book Digest* seeks permission to reproduce. The list includes *Walking to Church*, and explicitly identifies the owner as "Mr. and Mrs. Ken Stuart."

33.    Attached hereto as Exhibit P is a true copy of a letter produced by Defendants (Defendants' Bates Nos. 000150), dated October 29, 1976, from Gardiner to Nancy Luria Allen, Assistant Editor of *Book Digest* magazine, acknowledging receipt of Ms. Allen's letter of October 18, 1976 (Exh. N

hereto), which identified "Mr. and Mrs. Ken Stuart" as the owner of *Walking to Church.*

34.    Attached hereto as Exhibit Q is a true copy of an article entitled "Unforgettable Norman Rockwell," written by Mr. Stuart Sr., and published in the July 1979 issue of *Reader's Digest*.  In the article, Mr. Stuart Sr. recounted his relationship with Rockwell and wrote about Rockwell having given *Saying Grace* to him:

> Norman often gave away paintings to friends who admired his work.  "Don't you want one?" he [Rockwell] asked reproachfully. I said, "Yes, I'd love to have one."  "Which?" Norman asked.  I was flustered by his directness.  Since *Saying Grace* was on the wall, I said, "How about this one?"  So he gave it to me as casually as another might bestow a cigar.  (Id. at 107 – 08.)

35.    Attached hereto as Exhibit R are true copies of excerpts from the Reader's Digest Edition of *Norman Rockwell's America*, published in 1976 ("*Norman Rockwell's America*").  In that book, *Saying Grace* and *Walking to Church* are reproduced and their ownership is listed, once again, as "Mr. and Mrs. Ken Stuart."

36.    Attached hereto as Exhibit S is a true copy of an excerpt from *Norman Rockwell, The Faith of America*, published by Abbeville Press in 1980, text by Fred Bauer, in which Bauer again recounts the manner in which Mr. Stuart Sr. was given *Saying Grace* by Rockwell.

37.    Attached hereto as Exhibit T is a true copy of a transcript of a Sworn Statement of Philip H. Strubing, taken on December 10, 1985 by Gene

R. Leeuw, Esq., in which Mr. Strubing testified, among other things, that he worked as a lawyer for Curtis from 1936 to 1967, that he was aware that Mr. Stuart Sr. possessed *Saying Grace* "at his house, now," that such possession "would never have been authorized," and that he first became aware "in the late fifties" that Curtis employees personally possessed original paintings used for *Post* issues.  Despite having this knowledge since "the late fifties," Curtis took no action to assert ownership of the Paintings until 2001.

38.    Attached hereto as Exhibit U are true copies of excerpts from *Norman Rockwell: A Definitive Catalogue* ("*Definitive Catalogue*"), which was published in two volumes in 1986 by the Norman Rockwell Museum at Stockbridge, Inc. ("Rockwell Museum").  In the *Definitive Catalogue*, *Saying Grace* is reproduced and its ownership is listed as "Mr. and Mrs. Kenneth Stuart."  Significantly, just below the Stuarts' ownership of the original oil painting *Saying Grace* is confirmed, Curtis is listed as the owner of a charcoal and pencil study of *Saying Grace* (not the original oil painting).  And, attesting to the close personal relationship between Rockwell and the Stuarts, certain portraits by Rockwell of Mr. Stuart Sr. and Mrs. Katharine Stuart are included in the *Definitive Catalogue*, with ownership by the Stuarts. (Id. at 1029 – 31.)

39.    Attached hereto as Exhibit V are true copies of the exterior of a 60-minute commercial videotape entitled *Norman Rockwell and the Saturday Evening Post* narrated by Ken Stuart, produced in 1986 by Video Arts, Inc. ("Videotape").  (This production is now available in DVD format as well.)  The

image of *Saying Grace* appears on the back cover of the Videotape's case, where it is also noted "Certain art reproduced herein with the permission of the *copyright* owner, Curtis Publishing Company." (Emphasis added.)  During the one-hour production, Mr. Stuart Sr. sits beside *The Gossips* in his home as he describes the many faces in that work.  He also appears standing in front of *Saying Grace*, hanging on a wall in his home as he describes that work.  Curtis obviously was aware of the Videotape, since it gave its permission to use the copyrights associated with the two Paintings.

40.     Attached hereto as Exhibit W is a true copy of a letter, dated May 13, 1986, from Beurt SerVaas, Chairman of the Board of Curtis, to Mr. Stuart Sr. at his home in Connecticut.  In his letter, Mr. SerVaas stated that Curtis was aware that Mr. Stuart Sr. possessed *Saying Grace*, and requested that Mr. Stuart Sr. provide a list of any additional such works possessed by him.

41.     Attached hereto as Exhibit X is a true copy of a letter dated June 2, 1986, sent via Certified Mail by Attorney Abelman, who represented Mr. Stuart Sr., to Beurt SerVaas, which read as follows:

> I represent Mr. [Stuart Sr.] who asked me to respond to your letter of May 13, 1986.  Mr. [Stuart Sr.] is the owner and in possession of the original Norman Rockwell painting entitled "Saying Grace."  This painting was given to him by Mr. Norman Rockwell in 1952.  The gift was given with the full knowledge of the President of Curtis Publishing Company at the time and the editors of the Saturday Evening Post.
>
> In as much as there are numerous books published and, no doubt, still to be published concerning the works of Norman Rockwell, there would seem to be little point in Mr. [Stuart Sr.]

compiling a list of the works owned by him by Norman Rockwell, especially since certain of the works have nothing whatever to do either with Curtis or the Saturday Evening Post.

42.     Attached hereto as Exhibit Y is a true copy of a decision in *Saturday Evening Post Co. and Curtis Publishing Co. v. Rumbleseat Press, Inc.,* 816 F. 2d 1191 (7th Cir. 1987).  In 1985, Curtis and the *Post* sued a former licensee for breach of contract for continuing to manufacture porcelain dolls derived from certain illustrations created by Rockwell and published in the *Post*.  The fact that Curtis and the *Post* demanded arbitration against Rumbleseat in 1984 and then litigated the dispute from 1985 through 1987 demonstrates that the Defendants were perfectly capable of commencing a lawsuit against the Stuarts in 1986, yet they did not do so.

43.     Attached hereto as Exhibit Z is a true copy of an excerpt of the Afterword of the first illustrated edition (published in 1988) of the autobiography of Rockwell, *My Adventures As An Illustrator* (Doubleday 1960)("*Adventures*").  In that book, Rockwell's son, Tom, quotes from a memorandum dated August 7, 1963, written by Bob Sherrod (the *Post's* Editor-in-Chief after Ben Hibbs) to Clay Blair, Jr. (the *Post's* Editor-in-Chief in 1963, following Sherrod) in connection with Rockwell's relationship with the *Post*:

> I told you last week that Norman Rockwell is getting offers from other magazines.  He phoned this morning to say that he had decided he wants to free-lance, but he is anxious to have the *Post's* blessing (Norman has a horror of doing anything awkwardly or surreptitiously.)

13

> Specifically, he has been approached by Herb Mayes of McCall's and Dan Mich of Look.  Both have promised to let him paint anything he wants to, in whatever way he wants to paint it, anywhere in the world….
>
> He would still be able to do a portrait now and then for the Post….
>
> I take it that all Norman wants is our approval, and I don't see how we can refuse to let him take on other work – particularly since no contractual agreement exists between him and the Post….

(*Adventures* at 420.)

44.     One of Rockwell's diary entries, quoted in *Adventures*, reflects Rockwell's sentiments toward Mr. Stuart Sr.:

> In Mr. Lorimer's day the art editors of the *Post* made relatively few final decisions.  They had to get the okay on most major work – and so, in the end, the decision to accept a cover or illustration was usually Mr. Lorimer's rather than the art editor's.  It's all different now.  Ken [Stuart] runs the art department.  He makes the decisions.  He is, in function as well as title, the art editor.

(*Adventures* at 375.)

45.     Rockwell had tremendous respect for Mr. Stuart Sr., continuing in that excerpt from his diary:

> To Philadelphia for lunch with editors of the *Post*.  Showed sketches to Ken Stuart before lunch.  My favorite art editor.  Lets me do my own work, doesn't hold me back or try to paint the picture himself (some art editors want to get in on every brush stroke).  But Ken's helpful.  Always arranging things for me.  Makes valuable suggestions.  He gives me the feeling that he believes in me and only wants to help me realize my own ideas.  Ben Hibbs once said that an editor's job is to create an atmosphere in which artists and writers can do their best creative work.  That's what Ken does.  To perfection.

\*\*\*\*\*\*

And I think he does a tremendously creative job.  For one thing, he has transformed the cover.

\*\*\*\*\*\*

So now Ken has to get fifty-two separate, untitled, storytelling pictures every year.  A very, very difficult task.  If he had stuck to the old formula his job would have been much simpler.  Illustrators who can paint dogs or pretty girls are relatively easy to find;  illustrators who can paint storytelling pictures, who have a feeling for people, are scarce.  But Ken somehow manages to get the fifty-two covers every year.  And he's done it for sixteen years; that's 832 covers in all.  Moreover, he's responsible for all the illustrations and the layouts and photographs inside the *Post*.  Yet Ken never hurries me, doesn't call up every other day to ask, "Where's the picture?  Where's the picture?" as some art editors do.  And when I call him up he's always ready to help.

Ken was a successful illustrator before he became art editor of the Post.  He had studied abroad, where he knew Brancusi, Pascin, and other modern painters and sculptors.  In other words, he has a thorough artistic background.  No wonder he understands illustrators.  Just as there is no better way to understand the Hottentots than to go and be one, there is no better way to understand illustrators than to be one.

I often marvel that along with his artistic talent Ken has the executive ability and detachment not only to run his department but to handle a stable of highly temperamental illustrators as well.  Artistic talent and executive ability don't often go together, but Ken has both.  The *Post* cover is my best and only opportunity to express myself fully.  And Ken lets me do it.  He doesn't impose any restrictions.  *He* has created for me the atmosphere in which I can do my best work.

(*Adventures* at 375-76.)

46.  Rockwell's professional respect for Mr. Stuart Sr. is also reflected in the following diary entry:

> Ken Stuart called to tell me that the National Educational Association is awarding me a medal for my cover of the boy graduate.  James Conant, Jacques Barzun, Margaret Mead, and several others are to receive medals too.  I'm very pleased and proud, though I can't help thinking it's slightly ridiculous.  James Conant belabored his brains out for two or three years (and what a set of brains, too!) writing a book and then I get the same medal for a *Post* cover.  Well.
>
> I told Ken he should get half the medal.  After all, he designed the background of the cover: newspaper headlines screaming disaster on which the figure of the boy is superimposed.  That's why the boy is looking bewildered.  All these problems, he's thinking, juvenile delinquency, atomic fallout, strikes, Communism; is that the sort of world I'm entering?

(*Adventures* at 388.)

47.    Attached hereto as Exhibit AA are true copies of excerpts of *Norman Rockwell: Pictures for the American People*, which was published in 2000 in connection with a national tour of Rockwell works, and which was directly supported and assisted by both Curtis and the Stuart family (the "Tour Catalogue").  In fact, in the Directors' Acknowledgement section of the Tour Catalogue, the following statement appears:

> Joan SerVaas Durham and **the SerVaas family of the Curtis Publishing Company** have been most gracious in providing in-kind assistance for the reproduction rights of works originally presented in *The Saturday Evening Post*.  With their support, we have been able to share images from the exhibition more broadly, through educational materials, a web site, and other promotional efforts.
>
> ******
>
> We owe a special debt of gratitude to the individuals and institutions that **lent their Norman Rockwell original artwork,**

particularly for a tour of this length.  We are grateful to … **the family of Ken and Katharine Stuart**, as well as those private collectors who wish to remain anonymous.  (*Id*. at 12, emphasis added.)

48.    And, in the Checklist of the Exhibition section of the Tour Catalogue, the Paintings are explicitly listed as the property of "Ken and Katharine Stuart." (*Id*. at 195.)

49.    Attached hereto as Exhibit BB is a true copy of a printout from the Rockwell Museum website that contains a reproduction of *The Gossips*, with ownership credited to the Stuarts, and only copyright credit to Curtis.

50.    Attached hereto as Exhibit CC is a true copy of a Right of First Refusal Agreement between the Rockwell Museum and Stuart & Sons, L.P., Stuart Jr.'s company.  In connection with this Agreement, the Rockwell Museum loaned Stuart & Sons $140,000, which has since been repaid.  It is noteworthy that during the time this Agreement was pending, Joan SerVaas Durham, CEO of Curtis, also served on the Board of Directors of the Rockwell Museum.

51.    Attached hereto as Exhibit DD is a true copy of a printout from the website of *Yankee Magazine* that contains a reproduction of *Saying Grace*. This reproduction is shown in conjunction with an article that appeared in the December 2004 edition of *Yankee Magazine* entitled "His Father's Son," regarding Jarvis Rockwell.  The website indicates that the painting is owned

by the "Ken and Katharine Stuart Collection," and only the copyright credit to Curtis.

52.     Plaintiffs respectfully request the Court to consider the annexed documents, the vast majority of which are quoted from or referred to in the Amended Complaint, in deciding Plaintiffs' Motion.  As demonstrated in the accompanying memorandum of law, such documents are matters of which judicial notice may be taken and may be considered on a motion for judgment on the pleadings.

53.     Under penalty of perjury, I hereby declare the foregoing statements to be true and correct to the best of my knowledge.

Wilton, Connecticut
June 10, 2005

By: _____
        Sandra J. Akoury (ct 21279)

# CERTIFICATION

This is to certify that a copy of the foregoing was sent via U.S. mail, postage prepaid on this 14th day of June, 2005, to the following counsel and *pro se* parties of record:

William M. Bloss, Esq.  
Koskoff, Koskoff & Bieder, P,C.  
350 Fairfield Avenue  
Bridgeport, CT 06604  

Kenneth J. Stuart Jr.  
5 High Ridge Road  
Wilton, CT 06897  

Anthony F. LoCicero, Esq.  
Karen J. Bernstein, Esq.  
Amster, Rothstein & Ebenstein, LLP  
90 Park Avenue  
New York, NY 10016  

Paul J. Pacifico, Esq.  
965 Post Road East  
Westport, CT 06880  

Peter R. Stern, Esq.  
McLauglin & Stern, LLP  
260 Madison Avenue  
New York, NY 10016  

Mary E. Sommer, Esq.  
Sandak, Hennessey & Greco, LLP  
707 Summer Street  
Stamford, CT 06901  

_____

Sandra J. Akoury