UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
(BRIDGEPORT)

– – – – – – – – – – – – – – – – – – – x

STUART & SONS, L.P., KENNETH STUART,     :
JR., EXECUTOR OF THE ESTATE OF           :
KENNETH STUART, SR.; TRUSTEE OF THE      :
KENNETH J. STUART TRUST; KENNETH         :
STUART, JR., WILLIAM STUART AND          :
JONATHAN STUART,                         :
                                         :
                       Plaintiffs,       :     Case No. 301 CV 1580 (AHN)
                                         :
              - against -                :
                                         :     July 22, 2005
THE CURTIS PUBLISHING COMPANY, INC.,     :
THE SATURDAY EVENING POST SOCIETY, A     :
DIVISION OF THE BENJAMIN FRANKLIN        :
LITERARY AND MEDICAL SOCIETY and THE     :
BENJAMIN FRANKLIN  LITERARY AND          :
MEDICAL SOCIETY, INC.,                   :
                                         :
                       Defendants.       :

– – – – – – – – – – – – – – – – – – – x

## CURTIS' AMENDED MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS

316484.1

## **<u>TABLE OF CONTENTS</u>**

I.  INTRODUCTION ................................................................................................ 1

II. FACTS .............................................................................................................. 1

    A.  The Parties' Arguments As Contained in the Pleadings ............................... 1

    B.  The Court Has Already Denied Plaintiffs' First Motion for
        Judgment on the Pleadings ............................................................................ 4

III. ARGUMENT ...................................................................................................... 6

    A.  Plaintiffs' Motion for Judgment on the Pleadings Should Be Denied
        Based on the Law of the Case Doctrine ....................................................... 6

    B.  There Still Remain Genuine Issues of Material Fact Concerning
        When Conversion of the Paintings Took Place ............................................. 9

    C.  Plaintiffs' Litigation Misconduct ............................................................... 123

        1.  Plaintiffs' Deficient Responses to Curtis' Document Requests ..... 124

        2.  Plaintiffs' Deficient Responses to Curtis' Contention
            Interrogatories ............................................................................... 14

IV. CONCLUSION .............................................................................................. 167

## TABLE OF AUTHORITIES

### CASES

*Adler v. Taylor,*
No. CV 04-8472, Slip op. (C.D. Cal. Feb. 2, 2005) ............................................... 8

*Am. Stock Exchange, LLC v. Mopex,*
215 F.R.D. 87 (S.D.N.Y. 2002) ............................................................................13

*Busquets-Ivars v. Ashcroft,*
333 F.3d 1008 (9th Cir. 2003) ............................................................................... 3

*Casey v. United States,*
161 F. Supp.2d 86 (D. Conn. 2001) (Fitzsimmons, Mag.) ............................. 6, 7

*Christianson v. Colt Indus. Operating Corp.,*
486 U.S. 800 (1988) ......................................................................................... 6, 7

*Coleman v. Francis,*
129 A. 718 (1925) ................................................................................................. 2

*Cumis Ins. Soc., Inc. v. Windsor Bank & Trust Co.,*
736 F. Supp. 1226 (D. Conn. 1990) (Nevas, J.) .............................................. 6, 7

*Luciani v. Stop & Shop Cos.,*
544 A.2d 1238 (1988) ........................................................................................... 2

*Maroun v. Tarro,*
646 A.2d 251 (1994) ............................................................................................. 2

*McPartlin v. C.I.R.,*
653 F.2d 1185 (7th Cir. 1981) .............................................................................. 3

*Mulder v. Commissioner,*
855 F.2d 208 (5th Cir. 1988) ........................................................................... 2, 3

*North River Ins. Co. v. Philadelphia Reinsurance Corp.,*
63 F.3d 160 (2d Cir. 1995) ............................................................................... 6, 7

*In re PCH Assocs.,*
949 F.2d 585 (2d Cir. 1991) ................................................................................. 7

*Virgin Atlantic Airways, Ltd. v. Nat'l. Mediation Bd.,*
956 F.2d 1245 (2d Cir. 1992) ............................................................................... 7

### STATUTES

FEDERAL RULES OF CIVIL PROCEDURE

8.................................................................................................................. 9

26............................................................................................................... 14

34............................................................................................................... 14

37...............................................................................................................13

## TREATISES

5A Wright, Miller & Kane, *Federal Practice and Procedure* (2004) ........................... 9, 10

## I.    INTRODUCTION

Defendants The Curtis Publishing Company, Inc., The Saturday Evening Post Society, and The Benjamin Franklin Literary and Medical Society, Inc., (collectively, "Curtis") submit this Amended Memorandum in Opposition to Plaintiffs' Motion for Judgment on the Pleadings.  Plaintiff's Motion adds nothing new to the Motion which Judge Nevas denied in June of last year.  It should be denied again.

## II.    FACTS

### A.    The Parties' Arguments As Contained in the Pleadings

On August 20, 2001, Plaintiff Stuart & Sons, L.P. ("Stuart & Sons") brought this action alleging that Curtis had wrongfully interfered with Stuart & Sons' alleged "ownership" of three Paintings entitled, "Saying Grace," "Walking to Church," and "The Gossips" (collectively, the "Paintings").  Stuart & Sons contends that the artist Norman Rockwell gifted the Paintings to Kenneth Stuart, Sr. ("Ken Stuart, Sr."), the former art director of Defendant *The Saturday Evening Post*.  Stuart & Sons also alleged that Stuart, Sr. gifted the Paintings to his sons, Plaintiffs William, Jonathan, and Kenneth Stuart, Jr. ("Ken Stuart, Jr.") through a Trust which is one of the Plaintiffs.  Further, Stuart & Sons alleges that the limited partnership was created as a tax shelter for Ken Stuart, Sr., and that the Paintings were part of the assets of said partnership.

Stuart & Sons further contended that Curtis is barred from claiming ownership of the Paintings by the statute of limitations for conversion and laches, because it knew about Ken Stuart, Sr.'s possession of the Paintings for approximately fifty years, the Paintings were publicly displayed and identified as being part of the "Ken and Katharine Stuart Collection," and because Curtis could have requested Ken Stuart, Sr. return the

Paintings at different time intervals from the 1950s to 2001, but did not. *See* Dkt. No. 4 (First Amended Complaint, dated Aug. 29, 2001).

Curtis counterclaimed that it is the rightful owner of the Paintings and that the statute of limitations for conversion of the Paintings did not commence until 2001, when there was a demand by Curtis for the return of the Paintings and a refusal by Stuart & Sons after Plaintiff Ken Stuart, Jr., the Managing Partner of Stuart & Sons, L.P., attempted to auction off the Paintings to Sotheby's.  In reply, Stuart & Sons contended that Curtis is barred by the statute of limitations on conversion because the conversion took place long ago.  *See* Dkt. No. 7 (Stuart & Sons' Reply to Defendants' Counterclaims, dated Oct. 2, 2001).[1]

Stuart & Sons also alleged that Curtis is precluded by the doctrine of laches from claiming title to the Paintings, because Curtis delayed in demanding the return of the Paintings dating back to the 1950s.  *See* Dkt. No. 7 (Stuart & Sons' Reply to Defendants' Counterclaims, dated Oct. 2, 2001).  Stuart & Sons allege that a demand was ultimately made in a May 13, 1986 letter from Curtis' President Beurt SerVaas to Ken Stuart, Sr. wherein Curtis inquired as to Mr. Stuart's possession of some original Post artwork, including "Saying Grace."  A June 2, 1986 letter sent by Mr. Stuart, Sr. (through his lawyer, Arthur F. Abelman, Esq.) asserted that he was the owner of "Saying Grace."  *See id.*  Curtis denied that it ever received this letter or that Plaintiffs can produce the certified mail receipt.  *See Mulder v. Commissioner*, 855 F.2d 208, 212 (5th Cir. 1988) (no presumption of delivery exists for certified mail when the requested return receipt is

---

[1] As explained in Curtis' previous Opposition to Stuart's Motion for Judgment on the Pleadings, Connecticut law recognizes two theories of conversion: (1) "possession of the allegedly converted goods is wrongful from the outset"; and (2) "the conversion arises subsequent to an initial rightful possession." *Maroun v. Tarro*, 646 A.2d 251, 253 (1994) (*citing Coleman v. Francis*, 129 A. 718 (1925)); *see also Luciani v. Stop & Shop Cos.*, 544 A.2d 1238, 1240 (1988).  *See* Dkt. No. 30 (Memorandum in Opposition to Stuart's Motion for Judgment on the Pleadings, dated April 4, 2003).

not received by the sender); *McPartlin v. C.I.R.*, 653 F.2d 1185, 1191 (7th Cir. 1981). *See also Busquets-Ivars v. Ashcroft*, 333 F.3d 1008, 1009 (9th Cir. 2003).

However, Mr. SerVaas' letter made no demand of any kind on Mr. Stuart, Sr. Indeed, Stuart & Sons acknowledges in its Second Amended Complaint that "Curtis never claimed ownership of the Paintings during Ken, Sr.'s employment at Curtis or advised Ken, Sr. that it believed that his acquisition of the Paintings was wrongful." Dkt. No. 46 (Plaintiffs' Second Amended Complaint), ¶ 77. Further, the Second Amended Complaint also states that neither Mr. SerVaas "nor anyone else at Curtis ever contacted Ken, Sr. to claim ownership of the Paintings." *Id.* at ¶ 79.

It was not until August 1, 2001 and August 3, 2001, that Curtis wrote to Sotheby's asserting that it was the rightful owner of the Paintings, after Sotheby's had notified Curtis in July of 2001 that Stuart & Sons planned to sell the Paintings through Sotheby's auction service. It was then that Curtis demanded from Stuart & Sons the return of the Paintings. When the demand was refused, the statute of limitations began to run. This lawsuit started shortly thereafter.

In its Opposition to Stuart & Sons' first Motion for Judgment on the Pleadings, filed over two years ago, Curtis raised the issue of whether Stuart & Sons had standing to sue. In particular, Ken Stuart, Jr.'s brothers, William and Jonathan, had sued him in Connecticut State court for, *inter alia*, breach of fiduciary duty as the executor of Kenneth Stuart, Sr.'s Estate (the "Estate") and as Trustee for the Kenneth J. Stuart Trust (the "Trust"). Subsequently, in a decision dated June 28, 2004, Stuart & Sons, L.P. was voided *ab initio*. That Connecticut state court decision is currently on appeal. As a result, on November 16, 2004, this Court endorsed a stipulation to add Plaintiffs William Stuart, Jonathan Stuart, Kenneth Stuart, Jr., the Estate, and the Trust to the

instant suit and granted the amendment of the Complaint.  *See* Dkt. No. 45 (Endorsed Order, dated Nov. 16, 2004).  All of the Plaintiffs make the same allegations in the Second Amended Complaint, and these allegations are no different from the ones made in the previous Amended Complaint filed by Stuart & Sons.

### B.    The Court Has Already Denied Plaintiffs' First Motion for Judgment on the Pleadings

On March 7, 2003, Stuart moved for judgment on the pleadings, which was denied, because "Stuart ha[d] not clearly established that no material fact exists as to the class of conversion at issue and when the conversion occurred for purposes of the running of the statute of limitations."  *See* Dkt. Nos. 27, 28 (Stuart & Son, L.P.'s Motion for Judgment on the Pleadings, dated March 7, 2003; Dkt. No. 36 (Order dated June 28, 2004 denying Stuart & Sons, L.P.'s Motion for Judgment on the Pleadings).  The Court's June 28, 2004 Order denying Stuart's Motion for Judgment on the Pleadings also ordered discovery to proceed limited to the statute of limitations and laches issues for purposes of developing a more complete evidentiary record so that motions for summary judgment could be filed no later than September 1, 2004.  *See id.*  The June 28, 2004 Order also stated that if motions for summary judgment were not filed by September 1, then discovery would be opened to all allegations in the case.  Other than Curtis' document requests, for which Stuart & Sons did not respond, no other discovery took place and no motions for summary judgment filed.  Thereafter, the Court appointed Magistrate Judge Fitzsimmons to preside over settlement.  Unfortunately, the parties could not reach settlement.

As a result, on February 24, 2005, in a telephonic ruling, Magistrate Judge Fitzsimmons ordered discovery to commence.  *See* Dkt. No. 52 (Notification of Status

Conference, dated Feb. 14, 2005).  Discovery ended on April 15, 2005.  Magistrate Judge Fitzsimmons also set forth a briefing schedule on summary judgment motions with initial moving papers to be filed on June 1, 2005.  Other than (1) adding Plaintiffs, William Stuart, Jonathan Stuart, Kenneth Stuart, Jr., the Estate and the Trust to the motion, (2) adding a few more inadmissible exhibits, and (3) inserting a slip opinion from a foreign jurisdiction, Plaintiffs have filed the same motion for judgment on the pleadings that the Court earlier denied.

During discovery and pursuant to the Magistrate Judge's ruling, Plaintiffs propounded only one set of document requests and took no other discovery; and Curtis propounded document requests and contention interrogatories.  As will be explained *infra*, Plaintiffs provided deficient Responses that merit striking certain paragraphs of their Second Amended Complaint as a sanction under Rule 37, Fed. R. Civ. P. and/or awarding costs and attorneys' fees.

Stuart & Sons and the other named Plaintiffs ask the Court yet again to determine, as a matter of law, whether (1) Plaintiffs have title to the Paintings; (2) the Connecticut statute of limitations precludes Curtis from claiming title to the Paintings; and (3) Curtis' counterclaims are barred by the doctrine of laches.  However, the evidentiary record has not changed since Stuart & Sons last moved for judgment on the pleadings and Plaintiffs cite no new law that merits a second review of their Motion for Judgment on the Pleadings.

Accordingly, Curtis respectfully requests the Court deny Plaintiffs' Motion for Judgment on the Pleadings.

## III.  ARGUMENT[2]

### A.  Plaintiffs' Motion for Judgment on the Pleadings Should Be Denied Based on the Law of the Case Doctrine

Under the law of the case doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988); *North River Ins. Co. v. Philadelphia Reinsurance Corp.*, 63 F.3d 160, 164 (2d Cir. 1995) (a "legal decision made at one stage of litigation, unchallenged in a subsequent appeal when the opportunity to do so existed, becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time"); *Casey v. United States*, 161 F. Supp.2d 86, 91 (D. Conn. 2001) (Fitzsimmons, Mag.).  Indeed, decisions made by the district court during the course of litigation constitute the law of the case.  *See Christianson*, 486 U.S. at 816 ("the [law of the case] doctrine applies . . . to a court's own decisions"); 18 MOORE'S FEDERAL PRACTICE, § 134.22[1][a] (3d ed. 2005) ("[d]ecisions made by the district court during the course of litigation establish the law of the case"); *cf. Cumis Ins. Soc., Inc. v. Windsor Bank & Trust Co.*, 736 F. Supp. 1226 (D. Conn. 1990) (Nevas, J.).[3]

---

[2] For further factual and legal arguments directed to the merits of Plaintiffs' Motion for Judgment on the Pleadings, please see Dkt. No. 30 (Curtis' Opposition to Stuart's Motion for Judgment on the Pleadings, dated April 4, 2003).

[3] At the time *Cumis* was decided, the Court of Appeals for the Second Circuit had not yet applied the Supreme Court's articulation of the law of the case doctrine found in *Christianson*. As *Christianson* and subsequent Second Circuit decisions make clear, the law of the case doctrine no longer involves a determination of prejudice to the party seeking benefit of the doctrine.  Rather, the law of the case doctrine centers on the three prongs articulated in *Virgin Atlantic* and *Casey*: (1) an intervening change of controlling law; (2) the availability of new evidence; and (3) the need to correct a clear error of law or to prevent manifest injustice. *See Casey*, 161 F. Supp.2d at 91 (Fitzsimmons, J.); *Virgin Atlantic Airways, Ltd. v. Nat'l. Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992).  The *Casey* court found that the law of the case doctrine did not apply because relevant facts had been added to the evidentiary record meriting reconsideration of its previous decision.  However, unlike *Casey*, no new evidence has been uncovered in the instant action meriting further review.

Though the application of the doctrine of law of the case is discretionary in nature, a court should be "loathe" to reconsider its prior decisions in the absence of "extraordinary circumstances." *North River*, 63 F.3d at 165 (*quoting Christianson*, 486 U.S. at 817); *Casey*, 161 F. Supp.2d at 91. *See also Virgin Atlantic Airways*, 956 F.2d at 1255; *In re PCH Assocs.*, 949 F.2d 585, 592 (2d Cir. 1991). Such "extraordinary circumstances" include: (1) an intervening change of controlling law; (2) the availability of new evidence; and (3) the need to correct a clear error of law or to prevent manifest injustice. *See Virgin Atlantic*, 956 F.2d at 1255; *Casey*, 161 F. Supp.2d at 91–92 (*citing DiLaura v. Power Auth. of State of New York*, 982 F.2d 73, 76 (2d Cir. 1992) (Fitzsimmons, J.)).

In the instant case, Plaintiffs have not alleged any new facts or raised any new law meriting reconsideration of the prior motion for judgment on the pleadings. Further, Plaintiffs have failed to establish that the Court must correct a clear error of law or that Plaintiffs have suffered a manifest injustice. Instead, all that Plaintiffs offer is same the rehashed arguments it made well over two years ago.

The time for Plaintiffs (or at least Stuart & Sons) to have sought reconsideration of its Motion has long since expired, and Plaintiffs point to no legal authority to support their second attempt to obtain judgment on the pleadings. *See* United States Dist. Court for the Dist. of Conn., L.R. 7(c) ("[m]otions for reconsideration shall be filed and served within ten (10) days of the filing of the decision or order from which relief is sought..."). It is also questionable why Stuart & Sons (and the remaining named Plaintiffs) are seeking judgment on the pleadings when Magistrate Judge Fitzsimmons ordered briefing on summary judgment.

Plaintiffs' proffer of *Adler v. Taylor* in an attempt to request judicial review of its motion a second time should be seen for what it is: a thinly-veiled, untimely and unpersuasive attempt to move for reconsideration of the Court's prior denial of the Motion for Judgment on the Pleadings. Such behavior should not be condoned.

Specifically, Plaintiffs' citation to *Adler v. Taylor* is inapposite and not controlling in the Second Circuit. *See* Plaintiffs' Motion for Judgment on the Pleadings, at 30-31. The *Adler* court applied a California statute to determine that the plaintiff was barred by the statute of limitations due to its lack of diligence in seeking the return of a Van Gogh painting. Two California statutes were at issue. California Civil Procedure Code § 354.3 was promulgated to "recover Holocaust-era artwork from individuals," and Cal. Civ. Proc. Code § 338(c) sets forth a three-year statute of limitations and provides a discovery rule. That is, the statute of limitation begins to accrue "when the plaintiff was on notice of the property's whereabouts." *Adler v. Taylor*, CV 04-8472, slip. op. at 4 (C.D. Cal. Feb. 2, 2005), attached as Exh. A to Memorandum of Law in Support of Plaintiffs' Motion for Judgment on the Pleadings. As explained in Curtis' previously filed Opposition to Stuart's Motion for Judgment on the Pleadings and *supra*, n.1, Connecticut does not follow a discovery rule. Instead, there must be a demand and a refusal before the statute of limitations begins to run.

Here, the Paintings are not Holocaust-era artwork and the law of conversion is entirely different in Connecticut than in California. Accordingly, Plaintiffs' reliance on *Adler* is misplaced and should be disregarded. Plaintiffs point to no other new law or identify any error made by Judge Nevas – undoubtedly because there was none.

-8-

## B. There Still Remain Genuine Issues of Material Fact Concerning When Conversion of the Paintings Took Place

As the Court determined when it denied Stuart's Motion for Judgment on the Pleadings, genuine issues of material fact still exist concerning what type of conversion of the Paintings took place and when it occurred. *See* Dkt. No. 36, Order dated June 28, 2004 denying Stuart & Sons, L.P.'s Motion for Judgment on the Pleadings). As in its previous Motion for Judgment on the Pleadings, Plaintiffs "completely ignore the pleadings in this matter." *See* Dkt. No. 30 (Defendants' Memorandum in Opposition to Stuart's Motion for Judgment on the Pleadings, dated April 4, 2003, at 6).

Given that the court must take the denials in Curtis' Answer and the assertions in its Counterclaims (as the nonmoving party) as true, there are numerous disputed material issues of fact precluding the grant of Stuart's Motion.[4]  *See* 5A Wright, Miller & Kane, *Federal Practice and Procedure* § 1368 at 529 (2004) (a "material issue of fact that will prevent a motion under Rule 12(c) from being successful may be framed by an express conflict on a particular point between the parties' respective pleadings"). For the Court's convenience, a complete comparison of the pleadings is annexed to the Supplemental Declaration of William Bloss[5] as Exhibit A.

Comparing the allegations contained in Plaintiffs' Second Amended Complaint and their Reply to Curtis' Counterclaims with the denials contained in Curtis' Answer and Counterclaims, which must be taken as true, at least the following disputed material issues of fact preclude a grant of the motion.

---

[4] Stuart's affirmative defenses of the statute of limitations and laches are deemed denied. *See* Fed. R. Civ. P. 8(d) ("[a]verments in a pleading to which no responsive pleading is required or permitted shall be taken as denied or avoided").

[5] All of the other exhibits referenced in this Amended Opposition remain the same and can be located in the Bloss Declaration, filed on July 6, 2005 with Defendants' original Opposition to Stuart's Motion for Judgment on the Pleadings. *See* Dkt # 66.

### Comparison of Plaintiffs' Second Amended Complaint with Curtis' Answer and Counterclaims

| Stuart's Second Amended Complaint | Stuart's Assertions | Curtis' Answer |
|---|---|---|
| Page 4, ¶ 15. | Rockwell never signed a contract delivering title to any of the Paintings to either Defendant. | Deny.  Page 4, ¶ 15. |
| Page 5, ¶ 18. | Defendants have never produced to Stuart & Sons any documentation reflecting Rockwell's transfer of title to any of the Paintings to either Defendant. | Deny.  Page 4, ¶ 18. |
| Page 5, ¶ 20. | Defendants have no documents specifically concerning either (a) payments made in connection with the Paintings, or (b) the transfer of any rights related to the Paintings to either Defendant. | Deny.  Page 4, ¶ 20. |
| Page 13, ¶ 71. | On June 2, 1986, a letter was sent to Beurt SerVaas confirming that Ken Sr. was then the owner of *Saying Grace* and other works by Rockwell. | Deny. Page 11, ¶ 71. |
| Page 16, ¶ 95. | Defendants were aware that they had no colorable legal claim to the Paintings in Aug., 2001. | Deny. Page 14, ¶ 95. |
| Page 16, ¶ 97. | Defendants knew or should have known on Aug. 1, 2001 and Aug. 3, 2001 that the claims to ownership of the Paintings made in letters to Sotheby's bearing those dates were long barred by the applicable statute of limitations. | Deny. Page 15, ¶ 97. |

[Text continued on next page]

## Comparison of Curtis' Counterclaims with "Plaintiffs'" Replies[6]

| Curtis' Answer and Counterclaims | Curtis' Assertion | Stuart & Sons, L.P. Reply | William & Jonathan Stuart Reply | Kenneth J. Stuart, Jr. Reply |
|---|---|---|---|---|
| Page 21, ¶ 11. | As confirmed by Mr. Stuart, Sr., the Post, as successor-in-interest to Curtis, is the owner of the paintings entitled, "Saying Grace," "The Gossips," and "Walking to Church." | Deny. Page 3, ¶ 11. | Deny. Page 4, ¶ 11. | Deny. Page 3, ¶ 11. |

---

[6] On June 21, 2005 (inadvertently dated June 20, 2005), Curtis wrote Sandra Akoury, Esq., counsel for Jonathan and William Stuart, concerning the status of Plaintiffs amending their second Motion for Judgment on the Pleadings, which had been originally filed with the Court on June 1, 2005.  *See* letter dated June 20, 2005 [sic] from Karen J. Bernstein, Esq. to Sandra Akoury, Esq,. attached to the Bloss Decl. as Exh. B.  About a week beforehand, Ms. Akoury sought, and Curtis consented to, Plaintiffs amending their second Motion for Judgment on the Pleadings to conform to the page limitation set forth by the Court.  On June 10, 2005, Plaintiffs filed their amended motion.  In comparing Plaintiffs' June 10, 2005 amended motion with the June 1, 2005 motion, along with the exhibits attached to Ms. Akoury's declaration, revealed that Exhibit C had been replaced.  Exhibit C of both the June 1, 2005 and June 10, 2005 motions was a Reply to Curtis' Counterclaims.  The difference between the two was that the June 1, 2005 Exhibit C consisted of Stuart's Reply to Curtis' Counterclaims, dated **October 2, 2001** and the June 10, 2005 Exhibit C consisted of Plaintiffs' Reply to Defendants' Counterclaims, dated **December 10, 2004**.  Both replies were signed by counsel for Stuart & Sons and no other named Plaintiff.  *See id.*

On June 27, 2005, Ms. Akoury responded that she never filed a Reply to Curtis' counterclaims and was doing so, without Curtis' consent, on that day, over six months late.  *See* letter dated June 27, 2005 from Sandra Akoury, Esq. to Karen J. Bernstein, Esq., attached to the Bloss Decl. as Exh. C (without attachment).  This late Reply precipitated Curtis having to file an Amended Opposition to Plaintiffs' Motion for Judgment on the Pleadings.  Such inexcusable failure to file a timely Reply to Curtis' Counterclaims merits a default judgment.

Further, counsel for Stuart & Sons telephoned Curtis to seek its consent to the amendment of their Reply because they realized that they simply did not read Defendants' counterclaims and so they filed the exact same Reply to Defendants' Counterclaims that were served in 2001.  Further, counsel admitted that she did not look closely enough to notice that Curtis had dropped some of the paragraphs of the Counterclaims that had been previously pled.  Stuart & Sons filed its amended Reply on the very same day as Curtis filed its Opposition to Plaintiffs' Motion for Judgment on the Pleadings.  Many of the paragraph numbers changed in Stuart & Sons' Amended Reply to properly comport with the paragraph numbers in Curtis' Counterclaims, which also precipitated amendment of Curtis' Opposition to Plaintiffs' Motion for Judgment on the Pleadings..

Curtis also wrote to Ken Stuart, Jr., *pro se,* individually and on behalf of the Estate and Trust, because they, too, did not file a Reply to Curtis' Counterclaims.  *See* letter dated June 28, 2005 from Karen J. Bernstein, Esq. to Kenneth J. Stuart, Jr., attached to the Bloss Decl. as Exh. D.  Mr. Stuart did not respond and instead, without Curtis' consent, filed a Reply to Curtis' Counterclaims six months late.  This late Reply also precipitated amendment of Curtis' Opposition to Plaintiffs' Motion for Judgment on the Pleadings.  Like William and Jonathan Stuart's inexcusable late filing of their Reply to Curtis' Counterclaims, Ken Stuart, Jr.'s late filing of his Reply merits a default judgment against Ken Stuart, Jr., the Estate and the Trust on Curtis' Counterclaims.

-11-

**Comparison of Curtis' Counterclaims with "Plaintiffs'" Replies**[6]

| Curtis' Answer and Counterclaims | Curtis' Assertion | Stuart & Sons, L.P. Reply | William & Jonathan Stuart Reply | Kenneth J. Stuart, Jr. Reply |
|---|---|---|---|---|
| Page 21, ¶ 13. | The attempted consignment of the Paintings constituted conversion of the same. | Deny. Page 3, ¶ 13. | Deny. Page 4, ¶ 13. | Deny. Page 4, ¶ 13. |

Plaintiffs had the opportunity through discovery to develop the evidentiary record in this matter but did not. Thus, the Court should find it "loathe" to consider Plaintiffs' Motion for Judgment on the Pleadings once again. Such tactics do not merit reconsideration of Plaintiffs' Motion for Judgment on the Pleadings. Indeed, as explained more fully below, Plaintiffs' litigation misconduct has been inexcusable.

**C.     Plaintiffs' Litigation Misconduct**[7]

Federal Rule of Civil Procedure 37(b)(2)(C) permits a Court to "order striking out pleadings or parts thereof . . . or rendering a judgment by default against the disobedient party." Further, Fed. R. Civ. P. 37(c)(1) provides for the exclusions of evidence that should have been disclosed pursuant to Rules 26(a) and 26(e) unless: (1) the non-disclosing party provides substantial justification for its failure to disclose; or (2) the failure to disclose is harmless. *See* Fed. R. Civ. P. 37(c)(1). The "burden to prove substantial justification or harmlessness rests with the dilatory party." *Am. Stock Exchange, LLC v. Mopex*, 215 F.R.D. 87, 93 (S.D.N.Y. 2002) (citation omitted).

---

[7] On July 19, 2005, Curtis opposed Plaintiffs' Motion for Extension of Time from July 19, 2005 to August 19, 2005 to file their Reply in Support of their Motion for Judgment on the Pleadings because Plaintiffs contend they are awaiting third-party documents that "may" affect the instant case. However, Plaintiffs refuse to disclose the identity of these alleged parties. Without full disclosure, Defendants are unable to assess whether a thirty-day extension of time is warranted. Plaintiffs have no one else to blame for their litigation misconduct and therefore they should not be granted the privilege of an extension of time to obtain discovery that they should have pursued during the discovery period, which ended over three months ago.

316484.1

As set forth below, Plaintiffs' Responses to Curtis' written discovery requests clearly evidences Plaintiffs' willful refusal to comply with their discovery obligations, which merits sanctions.

### 1. Plaintiffs' Deficient Responses to Curtis' Document Requests

Curtis' First Set of Document Requests sought documents to support the allegations of Plaintiffs' Second Amended Complaint.  A review of "Plaintiffs'" Responses revealed glaring deficiencies consisting of either improper objections or Plaintiffs' refusal to produce documents citing no legal basis.  As this Court is aware, pursuant to Fed. R. Civ. P. 26(g), "[e]very discovery response[] . . . made by a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name . . . An unrepresented party shall sign the response . . . ." Plaintiffs Stuart & Sons, L.P. and Ken Stuart, Jr., individually, acting *pro se* on behalf of himself, the Estate, and the Trust neither signed the Responses to Curtis' First Set of Requests for Production of Documents nor the Responses to Curtis' First Set of Interrogatories and therefore all of Plaintiffs' Second Amended Complaint pertaining to Curtis' document requests and interrogatories should be stricken.

In addition, other than Plaintiff Stuart & Sons, the other named Plaintiffs did not produce documents kept in the ordinary course of business or organize or label the documents to correspond with the categories in Defendants' First Set of Request for the Production of Documents in accordance with Fed. R. Civ. P. 34(b).  Only Plaintiffs Jonathan and William Stuart's attorney signed the Responses to Curtis' First Set of Document Requests and no other named Plaintiff.

On January 31, 2005, Curtis wrote to counsel for Plaintiffs Jonathan and William Stuart concerning the above.  *See* letter dated Jan. 31, 2005, from Karen J. Bernstein, Esq. to Sandra Akoury, Esq., attached to the Declaration of William M. Bloss ("Bloss Decl.") as Exh. E.; letter dated Jan. 31, 2005 from Anthony F. LoCicero, Esq. to Peter R. Stern, Esq. and Mary E. Sommer, Esq., attached to the Bloss Decl. as Exh. F.  Plaintiffs provided no substantive response, except to advise that "[w]hile [the Responses to Curtis' document requests were] signed by Sandra Akoury as counsel to William A. Stuart and Jonathan Stuart, the Response to Defendants' document requests was served on behalf of *all* plaintiffs, as reflected in the opening sentence commencing with the words 'The Plaintiffs.'"  *See* letter dated Jan. 31, 2005 from Peter R. Stern, Esq. to Anthony F. LoCicero, Esq., attached to the Bloss Decl. as Exh. G (emphasis in original).[8]

### 2.    Plaintiffs' Deficient Responses to Curtis' Contention Interrogatories

Curtis' First Set of Interrogatories were contention interrogatories, which sought identification of documents to support the bases of the allegations of Plaintiffs' Second Amended Complaint.  Plaintiffs' Responses contained improper objections, were non-responsive, and did not properly identify documents to support the allegations of Plaintiffs' Second Amended Complaint.  Curtis requested Plaintiffs withdraw the improper objections, explain their responses and/or amend them.  Curtis also advised Plaintiffs that if they failed to withdraw their improper objections, explain their Responses, and/or amend them that Curtis would seek to preclude Plaintiffs from

---

[8] If this is the case for the Responses to Curtis' document requests, then the same should hold true for each individual Plaintiffs' Replies to Curtis' Counterclaims and Responses to Curtis' interrogatories. Indeed, the Second Amended Complaint is signed only by counsel for Stuart & Sons.  Yet, counsel for Stuart & Sons signed both Replies, dated October 2, 2001 and December 10, 2004, and Ms. Akoury's unilateral filing of the Reply, dated June 27, 2005, on behalf of Jonathan and William Stuart says otherwise.

introducing documents or testimony that Plaintiffs failed to identify in response to Curtis' contention interrogatories to support the allegations of Plaintiffs' Second Amended Complaint. *See* letter dated April 27, 2005, from Karen J. Bernstein, Esq. to Plaintiffs, attached as Exh. H to the Bloss Decl. Plaintiffs did not respond to the letter.

Curtis has been unduly prejudiced by Plaintiffs' failure to disclose and properly identify documents they intend to rely upon to support their case-in-chief. As a result, such litigation misconduct has a significant impact on Curtis' ability to defend itself in the instant suit. Thus, Curtis respectfully requests the Court strike Paragraphs 38, 39, 41-42, 45, 71, 73, 84-86, 90-107, and Plaintiffs' First, Second, Third, and Fourth Affirmative Defenses of the Second Amended Complaint and/or award costs and attorneys' fees incurred in propounding its written discovery and in bringing this Opposition.

IV.    CONCLUSION

For the foregoing reasons and for the reasons set forth fully in Curtis' opposition to Plaintiffs' Motion for Judgment on the Pleadings (Dkt. No. 30), Plaintiffs' Motion for Judgment on the Pleadings should be denied.

Respectfully submitted,

William M. Bloss (CT 01008)
KOSKOFF KOSKOFF & BIEDER P.C.
350 Fairfield Avenue
Bridgeport, CT 06604
Tel: (203) 336-4421

Anthony F. Lo Cicero (CT 04670)
Karen J. Bernstein (CT 24254)
AMSTER, ROTHSTEIN & EBENSTEIN LLP
90 Park Avenue
New York, NY 10016
Tel: (212) 336-8000

ATTORNEYS FOR DEFENDANTS

Dated:   July ____, 2005                    By:
_____                 _____
        New York, New York                          William M. Bloss (CT 01008)

Of Counsel:

Gene R. Leeuw (#08754-49)
John M. Mead (#17459-49)
LEEUW OBERLIES & CAMPBELL
320 North Meridian Street
Suite 1006
Indianapolis, IN 46204
Tel: (317) 684-6960

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he is one of the attorneys for defendants in the above-captioned action and that on the date which appears below, served copies of the foregoing CURTIS' AMENDED MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS by causing copies thereof to be served as follows:

### *via Facsimile and First Class Mail*

Peter R. Stern, Esq.
McLaughlin & Stern LLP
260 Madison Avenue
New York, NY 10016
Fax No.: (212) 448-0066

Sandra Akoury, Esq.
426 Danbury Road
Wilton, Connecticut 06897
Fax No.: (203) 762-9826

Paul Pacifico, Esq.
Pacifico & Filan
965 Post Road East
Westport, Connecticut 06880
Fax No.: (203) 221-8068

Mary Sommer, Esq.
Sandak Friedman Hennesse & Greco LLP
970 Summer Street
Stamford, CT 06905
Fax No.: (203) 325-8608

Mr. Kenneth Stuart, Jr.
5 High Ridge Road
Wilton, CT 06897
Fax No.: (203) 431-8236

Dated: New York, New York

_____
July ____, 2005                                    William M. Bloss