## Comparison of Stuart's Second Amended Complaint
## with Curtis' Answer and Counterclaims

| Stuart's Second Amended Complaint | Stuart's Assertions | Curtis' Answer |
|---|---|---|
| Page 4, ¶ 15. | Rockwell never signed a contract delivering title to any of the Paintings to either Defendant. | Deny. Page 4, ¶ 15. |
| Page 5, ¶ 18. | Defendants have never produced to Stuart & Sons any documentation reflecting Rockwell's transfer of title to any of the Paintings to either Defendant. | Deny. Page 4, ¶ 18. |
| Page 5, ¶ 20. | Defendants have no documents specifically concerning either (a) payments made in connection with the Paintings, or (b) the transfer of any rights related to the Paintings to either Defendant. | Deny. Page 4, ¶ 20. |
| Page 8, ¶ 34. | The majority of art commissioned by Ken Sr. for the Post was returned to the artists, including much of Rockwell's artwork. | Deny. Page 7, ¶ 34. |
| Page 9, ¶ 35. | Ken Sr. understood that Rockwell was not particularly interested in saving his paintings and that, if a painting were returned to Rockwell, he often sold it for a relatively modest price or gave it away. | Deny. Page 7, ¶ 35. |

313783.1

**Comparison of Stuart's Second Amended Complaint
with Curtis' Answer and Counterclaims**

| Stuart's Second Amended Complaint | Stuart's Assertions | Curtis' Answer |
|---|---|---|
| Page 9, ¶ 36. | Ken Sr. was himself authorized and encouraged by Curtis to give artwork that had appeared in the Post (including work produced by Rockwell and other artists, such as John Falter) to, among others, important advertisers, editors, politicians and executives of Curtis as well as other companies. | Deny. Page 7, ¶ 36. |
| Page 9, ¶ 38. | Curtis was fully aware of Ken Sr.'s authority to distribute, and the fact that he did personally distribute artwork that had appeared in the Post to a variety of people and institutions, including at least one president of the United States. | Deny. Page 7, ¶ 38. |
| Page 9, ¶ 39. | Because Post artwork did not have significant economic value to Curtis during Ken Sr.'s tenure as Art Director, the distributions took place in the ordinary course of business and without any formal corporate action, such as a resolution of Curtis's board of directors. | Deny. Page 7, ¶ 39. |
| Page 9, ¶ 41. | Ken Sr. came to own the other two Paintings, *The Gossips* and *Walking to Church*, in or about 1953. | Deny. Page 7, ¶ 41. |

## Comparison of Stuart's Second Amended Complaint
## with Curtis' Answer and Counterclaims

| Stuart's Second Amended Complaint | Stuart's Assertions | Curtis' Answer |
|---|---|---|
| Page 10, ¶ 42. | During his relationship with Rockwell, Ken Sr. received other artwork from Rockwell, including the portraits described above, sketches, etc. | Deny. Page 8, ¶ 42. |
| Page 10, ¶ 43. | In the early 1950's and 1960's, the Paintings and other artwork distributed by Ken Sr. did not have great economic value. | Deny. Page 8, ¶ 43. |
| Page 10, ¶ 45. | Ken Sr. did not hide his ownership of the Paintings from Defendants. | Deny. Page 8, ¶ 45. |
| Page 10, ¶ 48. | Defendants had, through and including August 2001, made little or no effort to obtain any of the thousands of works of art that graced the Post covers. | Deny. Page 8, ¶ 48. |
| Page 11, ¶ 54. | Ken Sr.'s ownership of the Paintings was a matter of public record for most of the second half of the last century. | Deny. Page 9, ¶ 54. |
| Page 12, ¶ 59. | The Paintings were, and are currently, on display at the Rockwell Museum and identified as the property of the "Ken and Katharine Stuart Collection." | Deny. Page 10, ¶ 59. |
| Page 12, ¶ 60. | The Rockwell Museum's website identifies the Paintings as part of the "Ken and Katharine Stuart Collection." | Deny. Page 10, ¶ 60. |

## Comparison of Stuart's Second Amended Complaint
## with Curtis' Answer and Counterclaims

| Stuart's Second Amended Complaint | Stuart's Assertions | Curtis' Answer |
|---|---|---|
| Page 12, ¶ 63. | The most senior executives at Curtis, as well as at least one outside counsel representing Curtis, were well aware of Ken Sr.'s ownership of the Paintings prior to his departure from Curtis in 1963. | Deny. Page 11, ¶ 63. |
| Page 12, ¶ 64. | After the acquisition of Curtis by members of the SerVaas family, Curtis began to license Rockwell artwork extensively and was aware that Ken Sr. identified the Paintings as his own many times over in, among other things, credit lines in millions of copies of books reproducing Rockwell images. | Deny. Page 11, ¶ 64. |
| Page 12, ¶ 65. | Curtis has recently claimed that, many years ago, Strubing and others (including an investment banker, other Post artists, and Curtis employees who were formerly working in the Philadelphia offices of Curtis) pointedly advised the company and members of the SerVaas family that Ken Sr. was wrongfully in possession of Rockwell artwork, including *Saying Grace*. | Deny. Page 11, ¶ 65. |

**Comparison of Stuart's Second Amended Complaint**
**with Curtis' Answer and Counterclaims**

| Stuart's Second Amended Complaint | Stuart's Assertions | Curtis' Answer |
|---|---|---|
| Page 13, ¶ 68. | In years past Curtis hired sophisticated copyright counsel in New York to examine its rights with respect to Rockwell artwork and engaged in litigation with Rockwell's heirs over certain intellectual property rights. | Deny. Page 11, ¶ 68. |
| Page 13, ¶ 71. | on June 2, 1986, a letter was sent to Beurt SerVaas confirming that Ken Sr. was then the owner of *Saying Grace* and other works by Rockwell. | Deny. Page 11, ¶ 71. |
| Page 13, ¶ 72. | At or about the same time, Dr. Cory SerVaas called the Stuart home to inquire about the Paintings. | Deny. Page 12, ¶ 72. |
| Page 14, ¶ 74. | There have been many open sales of artwork that Rockwell did for the Post that Defendants knew or should have known of and to which they made no objection. | Deny. Page 12, ¶ 74. |
| Page 14, ¶ 77. | Curtis never claimed ownership of the Paintings during Ken Sr.'s employment at Curtis or advised Ken Sr. that it believed that his acquisition of the Paintings was wrongful. | Deny. Page 12, ¶ 77. |

**Comparison of Stuart's Second Amended Complaint
with Curtis' Answer and Counterclaims**

| Stuart's Second Amended Complaint | Stuart's Assertions | Curtis' Answer |
|---|---|---|
| Page 14, ¶ 79. | At no time after Ken Sr.'s departure from the Post, even in Jan. 1969 when Curtis teetered on the edge of bankruptcy and stopped publishing the Post, did Curtis contact Ken Sr. and identify any of the Paintings as an asset of Curtis. | Deny. Page 12, ¶ 79. |
| Page 14, ¶ 80. | Although Beurt SerVaas claims to have gone into debt to buy a controlling interest in Curtis in or about 1970, neither he nor anyone else at Curtis ever contacted Ken Sr. to claim ownership of the Paintings. | Deny. Page 12, ¶ 80. |
| Page 15, ¶ 86. | Ownership of the Paintings was ultimately transferred to Stuart & Sons under Connecticut law before Ken Sr. passed away in Feb., 1993. | Deny. Page 13, ¶ 86. |
| Page 16, ¶ 93. | As of Aug. 1, 2001, Defendants had long had actual and constructive knowledge of Ken Sr.'s and Stuart & Son's ownership of the Paintings. | Deny. Page 14, ¶ 93. |
| Page 16, ¶ 95. | Defendants were aware that they had no colorable legal claim to the Paintings in Aug., 2001. | Deny. Page 14, ¶ 95. |

**Comparison of Stuart's Second Amended Complaint
with Curtis' Answer and Counterclaims**

| Stuart's Second Amended Complaint | Stuart's Assertions | Curtis' Answer |
|---|---|---|
| Page 16, ¶ 97. | Defendants knew or should have known on Aug. 1, 2001 and Aug. 3, 2001 that the claims to ownership of the Paintings made in letters to Sotheby's bearing those dates were long barred by the applicable statute of limitations. | Deny. Page 15, ¶ 97. |
| Page 16, ¶ 98. | Defendants have, since no later than 1986, contemplated making some claim to the Paintings and attempted, albeit unsuccessfully, to record testimony related to the Paintings in legally admissible form. | Deny. Page 15, ¶ 98. |
| Page 18, ¶ 110. | As a result of Defendants' wrongful claim to ownership of the Paintings, Stuart & Sons, The Trust and/or the Estate of Kenneth Stuart, Sr., Kenneth Stuart, Jr., Jonathan and William Stuart are entitled to a judgment declaring that Plaintiffs, either individually or through their respective interests in Stuart & Sons or the Trust have clear title to the Paintings and can retain or transfer ownership of the Paintings as they wish. | Deny. Page 16, ¶ 110. |

313783.1

**Comparison of Stuart's Second Amended Complaint
with Curtis' Answer and Counterclaims**

| Stuart's Second Amended Complaint | Stuart's Assertions | Curtis' Answer |
|---|---|---|
| Page 18, ¶ 112. | Following the alleged wrongful taking of the Paintings by Ken Sr. claimed by Defendants, Defendants abandoned any claim of title to the Paintings. | Deny. Page 16, ¶ 112. |
| Page 19, ¶ 113. | Defendants abandoned any rights they might have had in the Paintings by having failed to take any steps to recover possession of the Paintings or to provide notice to Stuart & Sons or to the public of Defendants' alleged claim to the paintings. | Deny. Page 117, ¶ 113. |
| Page 19, ¶ 114. | As a result of the foregoing acts and omissions, claim of title to the Paintings by Stuart & Sons, the Trust and/or the Estate of Kenneth Stuart, Sr., or Kenneth Stuart, Jr., Jonathan and William Stuart is superior to that of Defendants. | Deny. Page 17, ¶ 114. |

313783.1

**<u>Comparison of Curtis' Counterclaims with the Replies of Plaintiffs Stuart & Sons, L.P., William & Jonathan Stuart, and Kenneth J. Stuart, Jr.</u>**

| Curtis' Answer and Counterclaims | Curtis' Assertion | Stuart & Sons, L.P. Reply | William & Jonathan Stuart Reply | Kenneth J. Stuart, Jr. Reply |
|---|---|---|---|---|
| Page 18, ¶ 1. | The Saturday Evening Post Society is a division of the Benjamin Franklin Literary and Medical Society, an Indiana not-for-profit corporation with its principal place of business in Marion County, Indiana. | Insufficient knowledge. Page 1, ¶ 1. | Insufficient knowledge. Page 1, ¶ 1. | Insufficient knowledge. Page 1, ¶ 1. |
| Page 19, ¶ 2. | The Saturday Evening Post Society is the successor-in-interest to the literary works, art works and illustrations commissioned, published, and copyrighted by the Curtis Publishing Company, Inc., including all rights to the art works at issue herein. | Deny. Pages 1–2, ¶ 2. | Insufficient knowledge. Page 2, ¶ 2. | Insufficient knowledge. Page 1, ¶ 2. |
| Page 19, ¶ 4. | Curtis, in the course of publishing *The Saturday Evening Post* magazine, created and published literary works, art works, and illustrations in its magazines and on its covers for many years. | Deny. Page 2, ¶ 4. | Admit. Page 2, ¶ 4. | Admit. Page 2, ¶ 4. |

**Comparison of Curtis' Counterclaims with the Replies of Plaintiffs Stuart & Sons, L.P., William & Jonathan Stuart, and Kenneth J. Stuart, Jr.**

| Curtis' Answer and Counterclaims | Curtis' Assertion | Stuart & Sons, L.P. Reply | William & Jonathan Stuart Reply | Kenneth J. Stuart, Jr. Reply |
|---|---|---|---|---|
| Page 19, ¶ 5. | Curtis was the owner of all right, title and interest in and to such literary works, art works and illustrations that appeared in its magazines and on its covers. | Deny. Page 2, ¶ 5. | Insufficient knowledge. Page 2, ¶ 5. | Insufficient knowledge. Page 2, ¶ 5. |
| Page 21, ¶ 11. | As confirmed by Mr. Stuart, Sr., the Post, as successor-in-interest to Curtis, is the owner of the paintings entitled, "Saying Grace," "The Gossips," and "Walking to Church." | Deny. Page 3, ¶ 11. | Deny. Page 4, ¶ 11. | Deny. Page 3, ¶ 11. |
| Page 21, ¶ 12. | On July 12, 2001, Curtis received a written notice from Sotheby's, which claimed that Ken Stuart Jr. had attempted to consign the Paintings to Sotheby's. | Insufficient knowledge. Page 3, ¶ 12. | Insufficient knowledge. Page 4, ¶ 12. | Insufficient knowledge. Page 4, ¶ 12. |
| Page 21, ¶ 13. | The attempted consignment of the Paintings constituted conversion of the same. | Deny. Page 3, ¶ 13. | Deny. Page 4, ¶ 13. | Deny. Page 4, ¶ 13. |
| Page 21, ¶ 15. | Counterclaim plaintiffs are entitled to a judgment declaring that they have clear title to the Paintings, and that counterclaim defendants have no rights therein, including without limitation the rights to transfer the same. | Deny. Page 3, ¶ 15. | Deny. Page 4, ¶ 15. | Deny. Page 4, ¶ 15. |

**Comparison of Curtis' Counterclaims with the Replies of Plaintiffs Stuart & Sons, L.P., William & Jonathan Stuart, and Kenneth J. Stuart, Jr.**

| Curtis' Answer and Counterclaims | Curtis' Assertion | Stuart & Sons, L.P. Reply | William & Jonathan Stuart Reply | Kenneth J. Stuart, Jr. Reply |
|---|---|---|---|---|
| Page 22, ¶ 17. | Counterclaim plaintiffs acquired information from the web site of the New Britain Museum in New Britain, Connecticut, that said Museum is in the possession of an original Saturday Evening Post cover drawn for Counterclaim Plaintiffs by John Falter and owned by them. | Insufficient knowledge. Page 4, ¶ 17. | Insufficient knowledge. Page 4, ¶ 17. | Insufficient knowledge. Page 4, ¶ 17. |
| Page 22, ¶ 18. | The New Britain Museum may have come into possession of this art work from the counterclaim defendants in this action or from Ken Stuart, Jr. | Insufficient knowledge. Page 4, ¶ 18. | Insufficient knowledge. Page 5, ¶ 18. | Insufficient knowledge. Page 4, ¶ 18. |
| Page 22, ¶ 19. | Counterclaim defendants may be in the possession of other original art works that were drawn for Curtis by Norman Rockwell, Stevan Dohanis, John Clymer, George Hughes and/or John Falter and are owned by Curtis, some or all of which may be rightfully owned by Curtis. | Deny. Page 4, ¶ 19. | Deny. Page 5, ¶ 19. | Deny. Page 4, ¶ 19. |