UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
Bridgeport

| | |
|---|---|
| STUART & SONS, L.P., :<br>THE ESTATE OF KENNETH J. STUART :<br>THE KENNETH J. STUART LIVING TRUST :<br>KENNETH J. STUART JR. :<br>WILLIAM A. STUART, M.D. :<br>JONATHAN STUART :<br>                 *Plaintiffs,* :<br>:<br>:<br>  - against - :<br>:<br>THE CURTIS PUBLISHING COMPANY, INC. :<br>THE SATURDAY EVENING POST SOCIETY, A :<br>DIVISION OF THE BENJAMIN FRANKLIN :<br>LITERARY AND MEDICAL SOCIETY, and THE :<br>BENJAMIN FRANKLIN LITERARY AND :<br>MEDICAL SOCIETY, INC. :<br>:<br>                *Defendants* : | Case No. 301 CV 1580 AHN<br><br><br><br>August 19, 2005 |

**PLAINTIFFS' MEMORANDUM IN FURTHER SUPPORT OF THEIR
MOTION FOR JUDGMENT ON THE PLEADINGS**

Plaintiffs ("Plaintiffs") hereby submit their response to Defendants' Objection to their Motion for Judgment on the Pleadings, dated July 6, 2005 and to Defendants' Revised Memorandum in Opposition to Plaintiffs' Motion for Judgment on the Pleadings dated July 22, 2005[1] (collectively, "Objections"). This memorandum is filed on behalf of all Plaintiffs. Plaintiffs assert that judgment should enter in their favor based on the newly-discovered information attached to the Declaration of Sandra J. Akoury dated

---

[1] Defendants submitted a revised memorandum in opposition to Plaintiffs' Motion for Judgment on the Pleadings on July 22, 2005, despite that they had not sought the Court's permission to do so or the Plaintiffs' consent to said filing.

1

August 19, 2005, submitted herewith. This Memorandum strictly addresses the discrete points raised in Defendants' Objections, and must be reviewed in conjunction with them.

1. **DEFENDANTS' OBJECTION**

   A. **Parties' Arguments Contained in the Pleadings**

Defendants argue that the law requires a demand for return of property before the statute of limitations for conversion begins to run.[2] They claim that they made no demand for return of the Paintings until August 2001, and consequently, their claims were filed in a timely fashion. Remarkably, they did not submit their "demand" letter to the Court to support this position. This omission is significant because the August 2001 letter is essentially identical to the 1986 letter, in that both letters merely seek *documentation* and neither requests return of the Paintings.[3] In essence, the Defendants either made demand in 1986, or they have not yet done so. If Defendants wish to have the Court consider their August 2001 letter a "demand," then undoubtedly the 1986 letter should also be considered a "demand."

Furthermore, the Defendants blatantly denied that they ever received the response from A. Abelman, Esq. to their 1986 letter (Exh. B hereto), or that the Plaintiffs could produce the certified mail receipt. (Def. Obj., p. 7.) Plaintiffs have now located and produced the certified mail receipt (Exh. A to Supplemental Declaration of Sandra J. Akoury dated August 19, 2005 ("Suppl. Decl.")). Therefore, the Defendants' argument that they did not receive the letter must fail. The Defendants simply can no longer hide behind their untrue allegation in support of their own failure to act in 1986.

---

[2] Plaintiffs' legal argument on this matter may be found in their Memorandum of Law in Support of Motion for Judgment on the Pleadings, p. 17, *et seq*.
[3] A copy of the Defendants' 2001 letter is attached hereto as Exhibit A. A copy of their 1986 letter, which was attached to the Akoury Declaration as Exhibit X, is attached hereto for the Court's convenience as Exhibit B.

2

Regardless of whether Mr. SerVaas's letter of May 13, 1986 is deemed a "demand" for return of the Paintings, the response letter from Attorney Abelman clearly provides notice to the Defendants of the painting's whereabouts and provenance, and unequivocally states that Mr. Stuart Sr. received the painting as a gift from Mr. Rockwell with the full knowledge of the Defendants. There is no reasonable interpretation of the circumstances surrounding these letters other than that Attorney Abelman's letter was received by the Defendants on June 9, 1986. And, having received certified notice of Mr. Rockwell's gift to Mr. Stuart Sr., the Defendants unquestionably had ample opportunity to assert their claim, either in the form of a demand (as they define it) or by filing a lawsuit at that time. Rather than demand the Paintings or sue to assert their claim of ownership, the Defendants did absolutely nothing for more than 15 years.[4]

In addition to the actual certified notice of Mr. Stuart Sr.'s ownership of *Saying Grace* the Defendants received in the 1986 letter from Attorney Abelman, they had earlier acknowledged his ownership in an article published *in their own publication*, *The Saturday Evening Post* in May/June 1976. (Exh. D to Suppl. Decl.) The Defendants' publication of this article, in which Mr. Stuart Sr. recounts his relationship with Mr. Rockwell and the manner in which he acquired *Saying Grace*, is undoubtedly an admission by the "Editor and Publisher" (Corey SerVaas) and "Chairman" (Beurt SerVaas), as printed on the magazine's masthead, that they had actual knowledge of Mr. Stuart Sr.'s ownership.

### B.  Denial of First Motion for Judgment on the Pleadings

Defendants argue that the "law of the case" doctrine precludes the Plaintiffs from resubmitting many of the same legal arguments they put forward in their Motion for

---

[4] Notably, even under the Connecticut General Statute addressing adverse possession of personal property, the Defendants have failed to raise their claim in a timely manner. (Conn. Gen. Stat. § 47-31.)

Judgment on the Pleadings dated March 7, 2003. This procedural argument must fail, as the Plaintiffs have merely responded in the manner prescribed in the Court's Order of June 28, 2004. In that Order, the Court invited the plaintiffs "to *resubmit* their legal arguments, with necessary factual support." (Emphasis added.) The Plaintiffs are merely resubmitting their legal arguments, as invited to do so by the Court, with additional support in the form of newly discovered documents, which address Defendants' failure to act within a reasonable time to assert their alleged ownership. For the foregoing reasons, the Court need not consider Defendants' procedural discussion of the appropriate timeframe in which the Plaintiffs could have submitted a motion for reconsideration of the Court's Order of June 28, 2004.

### C.  Genuine Issues of Material Fact

Defendants argue that there is a genuine issue of material fact as to when the conversion, if any, occurred.[5] Defendants have relied on their denials in their Answer to Second Amended Complaint as "proof" that a genuine issues of material fact exists. "A material fact is one that would affect the outcome of the suit under the governing law, and a dispute about a genuine issue of material facts occurs if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." ***Iacobelli Construction, Inc. v. County of Monroe***, 32 F. 3d 19, 23 (1994).

The Defendants have provided a comparison chart of the Pleadings in support of their Objection. However, none of the "disputed issues" contained therein rises to the level of *material* fact that would affect the outcome of the ultimate issue in this matter. As the Defendants have no documents to support their denial of certain allegations, their

---

[5] Plaintiffs dispute that any conversion occurred. It is Plaintiffs' position that Mr. Stuart Sr. was given ownership of the Paintings by Norman Rockwell, who owned the original canvasses, but if a conversion did occur, the statute of limitations would have long ago expired, as described in Plaintiffs' Motion.

4

good faith basis for the denials is dubious. A copy of Defendants' chart is attached hereto as Exhibit C, with an explanation of why Defendants' denials of the allegations in Plaintiffs' Complaint do not rise to the level of a *material* fact. In short, the Defendants' denials of the allegations made by the Plaintiffs in the pleadings have not been supported by one shred of evidence.

In addition to the foregoing, the Defendants' have offered the Court no credible explanation of their failure to act. The record in this case is replete with evidence that the defendant companies knew *exactly* who owned the Paintings for the last five decades. In addition, the public evidence, some of it published by the Defendants themselves, overwhelmingly demonstrates that the Defendants had ample notice of the Plaintiffs' claim of ownership, and therefore, every opportunity to assert their difference of opinion.

### D.   Plaintiffs' Alleged "Litigation Misconduct"

Defendants' repeated unfounded assertions as to the Plaintiffs' alleged "litigation misconduct" are nothing more than *ad hominem* attacks, particularly uncalled for in the context of the motions currently pending before the Court. These baseless allegations are nothing more than red herrings, designed to distract the Court from the real issues – that the Defendants simply failed to assert any claims of ownership in a reasonable, appropriate, and timely manner.

Defendants allege that "Stuart & Sons did not respond" to the Defendants' documents requests. This allegation is not only disingenuous, it is absolutely false. The written responses and objections were prepared and filed on behalf of all Plaintiffs, including Stuart & Sons. Furthermore, Defendants were provided the opportunity to, *and did*, review all of Stuart & Sons's, the Estate's, and the Trust's books and records, most of

which are completely irrelevant to this action.[6]  Defendants have merely made a sweeping statement that Stuart & Sons did not respond, however, they were unable to identify any documents under Plaintiffs' control that were not produced.  Their allegation is simply untrue.

In addition, the Defendants alleged that the remaining Plaintiffs failed to "produce documents kept in the ordinary course of business."  Plaintiffs William A. Stuart, M.D., Jonathan Stuart and Kenneth Stuart Jr. are individuals, and do not maintain records "in the ordinary course of business" having any relevance to this lawsuit.  Regardless, as all Plaintiffs stated in their responses to Defendants' Requests for Production, "[n]otwithstanding the Plaintiffs' objection, to the extent such documents exist and are in the possession or control of the Plaintiffs, they will be made available to Defendant's counsel at a mutually convenient time." (Pl. Resp. to Req. for Prod., Jan. 21, 2005.) Plaintiffs made every effort to provide Defendants with all documents in their possession at the time, despite Defendants' egregious document requests.[7]  Clearly, the Defendants' Requests for Production were overly broad, vague, burdensome, and in many cases, not likely to lead to admissible evidence.

Defendants' repeated accusations in the context of their pleadings are inappropriate in response to the motions currently pending.  Defendants' assertions as to Plaintiffs' alleged litigation misconduct are nothing more than attempts to divert the Court's attention from the real issues in this matter, and the considerable documents supporting the Plaintiffs' claims.  Certainly, if the Defendants believed that the Plaintiffs

---

[6] These books and records are located at Special Master Truebner's office in Stamford, pursuant to the order of the Connecticut Superior Court (Brennan, J.) dated June 6, 2002.

[7] Defendants documents requests included such requests as "All documents concerning the Paintings from 1955-present" (Def. Req. for Prod., Jan. 21, 2005, ¶ 12), "All advertising, brochures, catalogs, marketing and promotional materials and Internet website pages concerning, using or depicting the Paintings" (Def. Req. for Prod., Jan. 21, 2005, ¶ 18), and "All documents concerning Corey SerVaas, Beurt SerVaas and the Post." (Def. Req. for Prod. Jan. 21, 2005, ¶ 25.)

had acted improperly during discovery by failing to produce documents, their course of action should have been to take the appropriate actions defined in Fed. R. Civ. P. 37(2)(B), but no such actions were taken, and no motions have been filed. Consequently, the Defendants' request for sanctions is unreasonable and improper.

In summary, the Plaintiffs have provided every responsive document within their possession or control to the Defendants. The Plaintiffs have answered the Defendants' contention interrogatories to the best of their knowledge and belief. Furthermore, the Defendants have not put their concerns properly before the Court because they failed to comply with Fed. R. Civ. P. 37(2)(B). Therefore, sanctions for discovery issues are not only premature, they are not appropriate.

2.  **PLAINTIFFS' MOTION**

As described in detail in Plaintiffs' Motion, there is one fact the Defendants cannot disclaim; they simply did nothing for more than 50 years despite having been specifically told of the whereabouts and Mr. Stuart Sr.'s claim of ownership of *Saying Grace* (Suppl. Decl. Exhs. A, B; Akoury Decl., June 10, 2005, Exhs. W, X), having access to public information regarding the whereabouts of all three Paintings (Akoury Decl., June 10, 2005, Exhs. G, J, R, S, T, U, V, Z, AA, DD), and having published an article *in their own magazine* stating not only that Mr. Stuart Sr. owned *Saying Grace,* but how he had acquired it (Suppl. Decl. Exh. D).

Now, more than 50 years after the pertinent events, and after most of the individuals involved in the actual transactions have deceased, the Defendants have suddenly, inexplicably, asserted a claim of ownership. Fortunately, the Plaintiffs have been able to locate individuals who have factual knowledge of the events surrounding the provenance of the Paintings in issue, and all support the Plaintiffs' contentions. (See

7

Suppl. Decl. Exhs. B, C, I.) Below is a chart indicating the many times the Defendants missed opportunities to allege their claim of ownership, but failed to do so.[8]

| Date | Event |
|---|---|
| Early 1950s | Gift from Norman Rockwell to Kenneth Stuart Sr. of the three Paintings at issue |
| 1962 | Mr. Stuart Sr. leaves employment of *The Post* – clearly the Paintings were not in the possession of Curtis at this time |
| 1970 | SerVaas family goes into debt to purchase Curtis Publishing, presumably aware of the precise assets they were purchasing, including, if any, Rockwell paintings |
| 1976 | *The Saturday Evening Post* publishes an article written by Mr. Stuart Sr. stating that he owns *Saying Grace* and describing how he acquired it |
| 1979 | Similar article appears in Reader's Digest – published with permission of Curtis |
| 1985 | Deposition of Philip Strubing, in which he tells Curtis Publishing's attorney that Mr. Stuart Sr. is in possession of *Saying Grace* |
| 1986 | Letter from Beurt SerVaas to Mr. Stuart Sr., in which he requests information on *Saying Grace* |
| 1986 | Letter from Arthur Abelman, Esq., to Beurt SerVaas, in which he tells SerVaas that Mr. Stuart Sr. has *Saying Grace*, and the manner in which he acquired it, and refers SerVaas to books on Norman Rockwell re: other Paintings |

---

[8] In addition to the information contained in this chart, Plaintiffs respectfully invite the Court's attention to the chart included in their Memorandum in Support of Motion for Judgment (page 13, *et seq.*), which includes the numerous publications citing the ownership of the Paintings, as well as the public exhibitions of the Paintings.

On each of the occasions noted above, the Defendants had explicit knowledge, or should have known, of the true owner of the Paintings. Yet on each of these occasions, they did nothing.

Significantly, the current owners of Curtis, the SerVaas family, had no ties to the Defendants during the time Mr. Stuart Sr. acquired the Paintings. Management and ownership of the defendant companies have dramatically and indisputably changed over the years. That the SerVaas family has now decided, more than 30 years after they allegedly "went into debt" to purchase a struggling Curtis, to assert a claim of ownership of these Paintings is ludicrous and inexcusable. They have offered no plausible explanation for this delay in bringing their claim, and they have provided no documents supporting their position.

The Plaintiffs have demonstrated unequivocally that they are the true owners of the Paintings. The Defendants' outrageous delay in raising their claims is both inexplicable and inexcusable. This delay is more than 50 years after the transactions at issue occurred, more than 40 years after Mr. Stuart Sr. left their employ with the Paintings in his possession, almost 30 years after the Defendants published in their own magazine Mr. Stuart Sr.'s story of being given Saying Grace by Mr. Rockwell, and almost 20 years after Attorney Abelman advised them that Mr. Stuart Sr. owned Saying Grace and directing them to the numerous publications regarding Mr. Rockwell's art for information on Mr. Stuart Sr.'s other paintings.

**WHEREFORE**, the Plaintiffs respectfully request that the Court enter judgment in their favor on their Motion for Judgment on the Pleadings. In the alternative, the Plaintiffs request that the Court consider the extrinsic evidence submitted by the parties, and pursuant to Fed. R. Civ. P. 12(c) and Fed. R. Civ. P. 56, convert Plaintiffs' motion for Judgment on the Pleadings to a Motion for Summary Judgment, and thereafter enter judgment for the Plaintiffs.

**Respectfully submitted,
Plaintiffs
William A. Stuart, M.D. and
Jonathan Stuart**

**By: _____
Sandra J. Akoury (ct 21279)
Law Offices of Sandra Akoury
426 Danbury Road
Wilton, Connecticut 06897**

**Kenneth J. Stuart Jr.,** *pro se,*
**Individually, as Executor of the Estate of Kenneth J. Stuart, and as Trustee of the Kenneth J. Stuart Living Trust**

_____
**Kenneth J. Stuart Jr.**

# CERTIFICATION

This is to certify that a copy of the foregoing was sent via U.S. mail, postage prepaid on this 19th day of August, 2005, to the following counsel and *pro se* parties of record:

William M. Bloss, Esq.
Koskoff, Koskoff & Bieder, P,C.
350 Fairfield Avenue
Bridgeport, CT 06604

Kenneth J. Stuart Jr.
5 High Ridge Road
Wilton, CT 06897

Anthony F. LoCicero, Esq.
Karen J. Bernstein, Esq.
Amster, Rothstein & Ebenstein, LLP
90 Park Avenue
New York, NY 10016

Paul J. Pacifico, Esq.
965 Post Road East
Westport, CT 06880

Peter R. Stern, Esq.
McLauglin & Stern, LLP
260 Madison Avenue
New York, NY 10016

Mary E. Sommer, Esq.
Sandak, Hennessey & Greco, LLP
707 Summer Street
Stamford, CT 06901

_____
Sandra J. Akoury