Exhibit A

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
(BRIDGEPORT)

- - - - - - - - - - - - - - - - - - - - - - -x

STUART & SONS, L.P., KENNETH STUART, JR., :
EXECUTOR OF THE ESTATE OF KENNETH :
STUART, SR.; TRUSTEE OF THE KENNETH J. :
STUART TRUST; KENNETH STUART, JR., :
WILLIAM STUART AND JONATHAN STUART, :
                                     :

                 Plaintiffs,      :

             - against -           :    Case No. 301 CV 1580 (AHN)
                                       :

THE CURTIS PUBLISHING COMPANY, INC.,  :    October __, 2005
THE SATURDAY EVENING POST SOCIETY, A  :
DIVISION OF THE BENJAMIN FRANKLIN    :
LITERARY AND MEDICAL SOCIETY and THE  :
BENJAMIN FRANKLIN  LITERARY AND     :
MEDICAL SOCIETY, INC.,                    :

              Defendants.     :

- - - - - - - - - - - - - - - - - - - - - - -x

**CURTIS' [PROPOSED] SUR-REPLY TO PLAINTIFFS'
MEMORANDUM IN FURTHER SUPPORT OF THEIR
<u>MOTION FOR JUDGMENT ON THE PLEADINGS</u>**

Pursuant to the Court's _____, 2005 Order, Curtis hereby submits a Sur-Reply to Plaintiffs' Memorandum in Further Support of Their Motion for Judgment on the Pleadings.

### Summary of the Argument

Plaintiffs' Motion for Judgment on the Pleadings must fail once again because it completely ignores the pleadings in the instant matter and inexplicably adds belated evidence that contains inadmissible hearsay. *See Sellers v. M.C. Floor Crafters Inc.*, 842 F.2d 639 (2d Cir. 1988) (citation omitted) (a court may grant a motion for judgment on the pleadings only "where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings"); *Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57 (2d Cir. 1985); *George C. Frey Ready-Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp.*, 554 F.2d 551, 553 (2d Cir. 1977).

Further, as Curtis argued in its original Opposition to Stuart's Motion for Judgment on the Pleadings, filed on October 4, 2003, and which still holds true (1) "there are material facts in dispute as to which conversion theory applies" affecting when the statute of limitations for conversion of the Paintings commenced (Dkt. # 30, at 11); (2) whether a bailor-bailee relationship existed between Curtis and Plaintiffs' predecessor, Ken Stuart, Jr. (*id.*, at 12-13); and (3) laches is not a dispositive issue because "whether a party is guilty of laches is one of fact for the trier" (*id.*, at 13). Plaintiffs' "belated evidence" does nothing to overcome these arguments.

321397.1

## A.    The Pleadings Themselves Evidence that the Conversion is Not Time Barred

Plaintiffs' Reply argues that Curtis never "submit[ted] their 'demand' letter to the Court to support" their "claim that they made no demand for return of the Paintings until August 2001," because the 1986 letter and the August 2001 letters "merely [sought] *documentation* and neither request[ed] return of the Paintings." (Plaintiffs' Reply, at 2, 3). Plaintiffs' concession that the letters were only requests for documentation further create disputed issues meriting denial of the Motion for Judgment on the Pleadings. On the other hand, if Plaintiffs concede that the letters were not formal demands for return of the Paintings, then it is undisputed that Curtis demanded the return of the Paintings and Plaintiffs refused to return them in October, 2001. Indeed, Curtis has represented throughout this litigation that it became *aware* of Plaintiffs' attempted conversion of the Paintings in July and August, 2001. The demand for the Paintings and the refusal to return them came in the form of allegations and denials contained in Curtis' Counterclaims and Plaintiffs' Reply to Curtis' Counterclaims. (*See* Plaintiffs' Reply, at 2, 3; Exh. A, Akoury Decl. *See also* Dkt. #6, at ¶ 18 & "Wherefore" clause (Answer to Complaint and Counterclaim by Defendants against Stuart & Sons, L.P., dated Sept. 12, 2001); Dkt. #7, at ¶ 18 & "Wherefore" clause (Plaintiffs' Reply to Defendants' Counterclaims, dated October 2, 2001). Accordingly, the "demand" and "refusal" are evident by a reading of the pleadings in the instant matter. *See* BLACK'S LAW DICTIONARY, at 117 (West 1996) (complaint defined, in part, as the a "demand for relief . . ."); 2 MOORE'S FEDERAL PRACTICE, at § 7.02[3] (West 2004) (emphasis added) ("[c]ounterclaims

. . . are . . . **claims for relief** that may be set forth in answers to complaints")).[1]

Plaintiffs' Motion for Judgment on the Pleadings should be denied once again.

**B.  Plaintiffs' Allegations of Curtis' Purported "Failure to Act" in Demanding Return of the Paintings Lacks Merit**

Plaintiffs allege that "[Curtis] [has] offered the Court no credible explanation of their failure to act"; *i.e.*, demand the Paintings back. (Plaintiffs' Reply, at 5). Plaintiffs then set forth a chart purporting to evidence these alleged "missed opportunities," which does absolutely nothing to advance their motion.[2] (Plaintiffs' Reply, at 5).

First, Plaintiffs ignore the law on a motion for judgment on the pleadings, pursuant to Fed. R. Civ. P. 12(c). That is, the "court must take the allegations of the [nonmoving party's pleadings] as true . . . and construe all reasonable inferences to be drawn from these facts in favor of the [nonmoving party]." *Steiner v. Shawmut*, 766 F. Supp. 1236, 1241 (D. Conn. 1991) (Nevas, J.); *Grease Monkey Int'l., Inc. v. Watkins*, 808 F. Supp. 111 (D. Conn. 1992) (Margolis, Mag.). In other words, "all of [the nonmoving party's] well pleaded factual allegations . . . are assumed to be true and all contravening assertions in the movant's pleadings are taken to be false." *Abrahams v. Young & Rubicam*, 979 F. Supp. 122, 125 (D. Conn. 1997) (Dorsey, J.) (internal quotations and citation omitted) (ellipses in original); *see also MacDonald v. Du Maurier*, 144 F.2d 696

---

[1] Indeed, Plaintiffs' miraculous production of a never-before-seen copy of a certified mail, return receipt request card evidencing that Mr. Abelman's 1986 letter was received by Curtis is moot at this point, because Plaintiffs concede that the 1986 exchange of correspondence between Mr. SerVaas and Mr. Abelman did not constitute a demand for return of the Paintings and a refusal to return them. Neither was the August 10, 2001 letter to Mr. Ken Stuart, Jr., because the letters "merely [sought] *documentation* and neither request[ed] return of the Paintings." (Plaintiffs' Reply, at 2) (emphasis in original).

[2] The irrelevant and inflammatory assertion contained in the chart that the "SerVaas family [went] into debt to purchase Curtis" is unsupported by the evidentiary record and should be disregarded. (See Plaintiffs' Reply, at 9).

321397.1                                    -3-

(2d Cir. 1944) (ruling that allegations contained in the nonmoving party's amended complaint "must be accepted despite" the moving party's denials in its answer). Thus, Plaintiffs' chart allegedly evidencing the "many times [Curtis] missed opportunities to allege [its] claim of ownership" does nothing to relieve Plaintiffs of their burden. (*See* Plaintiffs' Reply, at 8).

Second, caselaw reveals that there is no "duty of reasonable diligence" on the rightful owners of chattel with respect to the statute of limitations on conversion. *See Hoelzer v. The City of Stamford*, 933 F.2d 1131, 1137 (2d Cir. 1991).[3] This is especially true when Curtis had no "reason to believe its possessory interest [in the Paintings] was ever in jeopardy." *Id.* Over the years, the Paintings were shown in Museums and displayed in exhibits. There were no "missed opportunities." Curtis knew the whereabouts of the Paintings and that Mr. Ken Stuart, Sr. had possession of them.

Third, the doctrine of laches requires Plaintiffs prove not only that Curtis unreasonably delayed but that they were somehow prejudiced by Curtis' unreasonable delay in bringing suit. *See The Detroit Institute of Arts Founders Society v. Rose*, 127 F. Supp.2d 117, 137 (D. Conn. 2001) (finding no laches since bailee "produced no evidence indicating that any delay by the [bailor] was prejudicial to them"). Plaintiffs' predecessor, Ken Stuart, Sr., enjoyed possession of the Paintings for many years by showcasing them throughout the country. There was no prejudice to Plaintiffs. If anything, Curtis has been prejudiced by Plaintiffs' attempt to sell the Paintings. Raising a

---

[3] The *Hoelzer* court applied New York law on the statute of limitations on conversion and laches, which are very similar to Connecticut's.

laches argument in the instant motion is inappropriate because it is a matter left for the trier of fact. (*See* Dkt. # 30, at 13).

### C.   The Never-Before-Produced May/June 1976 Issue of *The Saturday Evening Post* Article

Plaintiffs append to their Reply Memorandum a never-before-seen May/June 1976 article that ran in *The Saturday Evening Post* in an attempt to bolster their argument that the "Editor and Publisher [of the Post] . . . had actual knowledge of Mr. Stuart, Sr.'s ownership of" *Saying Grace*. (Plaintiffs' Reply, at 3). There are myriad problems with this argument.

First, as explained, *supra,* the law on the statute of limitations on conversion does not require that Curtis have "actual knowledge" or that unreasonable delay alone suffices to apply laches. Thus, this argument is irrelevant. Second, Plaintiffs never produced the May/June 1976 article in any pleading, motion, or at oral argument, thus violating the Federal Rules of Civil Procedure. For the reasons articulated in Section IV(A)-(C) of Curtis' Motion to Preclude Plaintiffs from Relying Upon the Supplemental Declaration of Sandra Akoury and the Affidavits and Documents Attached Thereto in Further Opposition to Plaintiffs' Motion for Summary Judgment ("Motion to Preclude"), the Court should preclude Plaintiffs from proffering the May/June 1976 article for any purpose, including the instant motion, because it was not produced in response to Curtis' document requests or specifically identified in Plaintiffs' unverified responses to Curtis' contention interrogatories. (*See* Dkt. #87, Motion to Preclude). Third, it is uncontroverted that Curtis knew that the Paintings were shown in museums, in art shows, and in publications, because Curtis gave Mr. Ken Stuart, Sr. *possession* of the

Paintings. Thus, as bailee, Plaintiffs' only had a possessory interest in the Paintings. *See Rose*, 127 F. Supp.2d at 117 (defendant-former NBC employee's attempt to sell the famous Howdy Doody puppet prompted suit, which resulted in the court's determination that defendant-heirs of the original bailee were not rightful owners and that the possession of the puppet did not entitle defendants to sell the puppet because there was a bailor-bailee relationship between the original parties).

The instant case is no different than the *Rose* case. Mr. Ken Stuart, Sr., a former Curtis employee, had possession and not title of the Paintings. He freely showed the Paintings and gave interviews about them. Mr. Ken Stuart, Sr., then willed the Paintings to his heirs. Plaintiffs never inherited *ownership* of the Paintings. It was when they attempted to transfer title to the Paintings at auction in 2001 is when Curtis sought to stop the unauthorized sale. The issue of whether Curtis and Ken Stuart, Sr. had a bailor-bailee relationship remains to be a disputed fact that should go to trial. (*See* Dkt. # 30, at 12-13).

### D.    Plaintiffs' Waived the Affirmative Defense of Adverse Possession Long Ago

For the very first time, Plaintiffs insert a footnote in their Reply that "even under the Connecticut General Statute addressing adverse possession of personal property, [Curtis] [has] failed to raise their claim in a timely manner," because Curtis allegedly "did absolutely nothing [to retrieve the Paintings] for more than 15 years." (*See* Plaintiffs' Reply, at 3 & n.4). Plaintiffs' analogy between the fifteen-year statute of limitations on adverse possession and the three-year statute of limitations on conversion is irrelevant and appears to be a weak attempt at improperly asserting adverse

possession in their dispositive motion.    However, Plaintiffs waived the affirmative defense of adverse possession long ago.

Federal Rule of Civil Procedure 8(c) "requires a party to plead affirmatively certain specified defenses as well as 'any other matter constituting an avoidance or affirmative defense.    [Therefore][,] [a] defendant who fails to raise an affirmative defense by presenting it in the initial responsive pleading may be deemed to have waived the defense.    [This is because] [t]he purpose of requiring affirmative defenses to be pleaded is to avoid surprise and to give the opposing party an opportunity to respond." *Oliver v. Cole Gift Centers, Inc.*, 85 F. Supp.2d 109, 111 (D. Conn. 2000) (*citing Blonder-Tongue Lab., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 350 (1971); 2 MOORE'S FEDERAL PRACTICE P 8.07[1]); *Sellers*, 842 F.2d at 642 n.2 ("[g]enerally, if an affirmative defense is not pleaded, it is waived and excluded from the case")).    Indeed, "an affirmative defense may not form the basis for a dispositive motion unless it is raised in the answer to the complaint."    *HCC, Inc. v. RH&M Machine Co.*, No. 96 Civ. 4920, 1998 U.S. Dist. LEXIS 17229, at *1-*2 (S.D.N.Y. Oct. 30, 1998).

Plaintiffs have had over four years to amend their pleadings to add affirmative defenses and they chose not to.    Plaintiffs waived the affirmative of defense of adverse possession in their Reply to Curtis' Counterclaims by failing to plead it and now attempt to improperly raise the affirmative defense in their dispositive papers.    Curtis has been unduly prejudiced by such an improper attempt to belatedly assert this affirmative

defense because it was not raised in the pleadings and thus was not the subject of fact discovery, which ended months ago.[4]

**E.    The Law of the Case Doctrine Should Be Applied to Plaintiffs' Motion Despite the "Newly-Discovered Documents"**

In a desperate attempt to rebut Curtis' argument that Plaintiffs' Motion for Judgment on the Pleadings should be considered a **second time** -- based on the Law of the Case Doctrine -- Plaintiffs proffer "newly discovered documents." (*See* Plaintiffs' Reply, at 4). However, such a second attempt should be denied because Curtis, as the non-moving party, "has had insufficient notice and opportunity to oppose [Plaintiffs'] motion for judgment on the pleadings" supported by "belated evidence" for which Curtis never had the opportunity to probe during fact discovery. *Cumis Ins. Soc., Inc. v. Windsor Bank & Trust Co.*, 736 F. Supp. 1226, 1229 (D. Conn. 1990) (Nevas, J.).

Here, Plaintiffs waited over four years since initiating suit and over two years since they original filed their Motion for Judgment on the Pleadings to reveal the belated evidence with no credible excuse for the delay. Curtis was not aware of the "newly-discovered" evidence until *after* Plaintiffs filed their moving papers, *after* Curtis filed its Amended Opposition, and days *after* Plaintiffs filed their Reply, because service was effected by first class mail only. Plaintiffs' bad faith is further highlighted by the fact that they did not advise Curtis in advance of the specific contents of the belated evidence before filing their Reply. Instead, they waited to "spring" it upon Curtis at the last possible moment.

---

[4] Pursuant to Fed. R. Civ. P. 16(b), the Court should not permit Plaintiffs to amend their Reply to Curtis' Counterclaims because they offer no credible explanation for why they waited so long to raise the affirmative defense and reopening discovery will only delay the matter further.

In *Johns-Manville Corp. v. Guardian Indus. Corp.*, the court applied the Law of the Case doctrine because the moving party's attempt to reopen a prior adjudication based on "new evidence" was considered "belated evidence." Defendants "had ten months from the time th[e] action was filed in the beginning of trial . . . to conduct tests" to prove that plaintiff's patent was invalid but failed to do so and offered no explanation for their more than two-year delay in advancing new tests. It was only until defendants "discovered . . . that the *plaintiff* had conducted tests," which they realized might have the prior decision reversed in their favor, that they sought to reopen the previous judgment. *Johns-Manville Corp. v. Guardian Indus. Corp.*, 116 F.R.D. 97, 105-107 (E.D. Mich. 1987) (italics in original).

The situation here is very similar. Over four years after the instant suit began, Plaintiffs, without any explanation whatsoever, find "new evidence" that should have been produced, at a minimum, in response to Curtis' documents requests during fact discovery. As explained in Curtis' Motion to Preclude, Plaintiffs fail to explain why they did not obtain the documents when they could have produced them much sooner. (*See* Dkt. #87, at 3-5). Like the defendants in the *Johns-Manville* matter who "did not bring [their] motion [to reopen a previous judgment] until they discovered that the plaintiff had conducted tests which might relieve them of liability," Plaintiffs in the instant matter awoke from their slumber and obtained the "belated evidence" in a last-ditch effort to get a second chance at judgment on the pleadings. But only *after* they saw that Curtis' Amended Opposition made legally supportable arguments to deny their Motion for Judgment on the Pleadings once again. *See Johns-Manville*, 116 F.R.D. at 106. Such

conduct merits denial of Plaintiffs' second attempt to move for judgment on the pleadings.

Further, Plaintiffs misconstrue the Court's June 28, 2004 Order to their benefit. The Order did not grant Plaintiffs permission to "resubmit their [motion for judgment on the pleadings] at *any time*, with necessary factual support." (Plaintiffs' Reply, at 3, 4) (emphasis added). The Court's June 28, 2004 Order clearly set forth that the "parties [were] encouraged to resubmit their legal arguments, with necessary factual support pursuant to Fed. R. Civ. P. 56(c), on the issue of when the statute of limitations accrued and the doctrine of laches . . . [by] **no later than September 1, 2004**." Dkt. No. 36 (Order denying Stuart & Sons, L.P. 's Motion for Judgment on the Pleadings, dated June 28, 2004) (emphasis added). The Order did not give Plaintiffs carte blanche to recycle their Motion for Judgment on the Pleadings, which was denied over a year ago, at any time.

Accordingly, the Court should not permit Plaintiffs to use the belated evidence to support their second Motion for Judgment on the Pleadings.

### F.    Exhibit C to Plaintiffs' Reply

Plaintiffs attach as Exhibit C to their Reply a chart that compares Plaintiffs' Second Amended Complaint with Curtis' Answer and Curtis' Counterclaims with Plaintiffs' Reply to allegedly show "why [Curtis'] denials of the allegations in Plaintiffs' Complaint do not rise to the level of a *material* fact." (Plaintiffs' Reply, at 5) (emphasis in original). Plaintiffs' Exhibit C does nothing to advance their motion, because the standard applied to judgments on the pleadings is that the Court is to take all of the non-moving party's allegations contained in their pleadings to be true. Thus, each of Curtis'

denials are taken as true and Plaintiffs' "Explanation" column in Exhibit C should be disregarded.

### G.   Plaintiffs' Arguments Concerning Their Litigation Conduct Are Incredible

Contrary to Plaintiffs' assertion that Curtis made "sweeping statement[s]" in their Amended Opposition to Plaintiffs' Motion for Judgment on the Pleadings about Plaintiffs' inability to comply with the Federal Rules of Civil Procedure, Curtis described with particularity the litigation misconduct that occurred depriving it of the ability to properly mount an effective defense at trial, including Plaintiffs' inexcusable responses to Curtis' discovery requests. (Plaintiffs' Reply, at 6. *See also* Dkt. # 73, at 18-22). Jonathan and William Stuart's, as well as Ken Stuart, Jr.'s, paltry document production consisted of a mere 159 pages and did not contain any Bates numbering. In addition, all of the named Plaintiffs refused to specifically identify any of the documents they intend to use at trial to support the allegations of their Complaint, which has left Curtis in the dark about how Plaintiffs will be advancing their case at trial. (*See* Plaintiffs' **unverified** Responses to Curtis' First Set of Interrogatories, attached hereto as Exh. A). Further, it is quite suspect why Plaintiffs would make the nonsensical argument that Curtis somehow bears the burden of "identify[ing] documents under Plaintiffs' control that were not produced." (Plaintiffs' Reply, at 6). Plaintiffs belatedly produced documents, which Plaintiffs could have accessed years ago but did not until now. Such belated production of documents only further casts a dark shadow over Plaintiffs' improper behavior throughout this litigation. (*See* Dkt. #87).

Plaintiffs' contention that "if [Curtis] believed that the Plaintiffs had acted improperly during discovery by failing to produce documents, their course of action should have been to take the appropriate actions defined in Fed. R. Civ. P. 37(2)(B)," and that "[s]anctions for discovery issues are . . . premature [and] . . . are not appropriate" belies their actions. Plaintiffs should be precluded from using the belated documents in the instant motion, at any pre-trial motions, in further proceedings, or at trial. (*See* Plaintiffs' Reply, at 6-7). Litigation is not meant to be a game of cat and mouse.

## H.    The Court Should Not Convert Plaintiffs' Motion for Judgment on the Pleadings into a Motion for Summary Judgment

Although the Court, "in its discretion," can convert a motion for judgment on the pleadings into one for summary judgment, it must do so "upon notice to all parties." *Sellers*, 842 F.2d at 642 (*quoting Falls Riverway Realty v. City of Niagara Falls*, 754 F.2d 49, 53-54 (2d Cir. 1985)). However, such a conversion is not permissible when the non-moving party "should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings." *National Ass'n of Pharm. Mfrs., Inc. v. Ayerst Lab.*, 850 F.2d 904, 911 (2d Cir. 1988) (citation omitted).

Curtis did not recognize that Plaintiffs' Motion would be converted into one for summary judgment for a number of reasons. First, Plaintiffs' motion is captioned "Motion for Judgment on the Pleadings." It is not titled, "Motion for Judgment on the Pleadings or, in the Alternative, Motion for Summary Judgment." Second, Plaintiffs' initial moving papers were virtually identical to its last one, save one new case, and did

not rely on any new evidence. It was only when Plaintiffs' filed their Reply that "new" extrinsic materials suddenly surfaced.

Curtis has also been deprived of an opportunity to challenge the belated evidence by conducting further discovery. The belated evidence was produced in Plaintiffs' Reply, **weeks after** Plaintiffs initially moved and **after** Curtis filed their Amended Opposition. Curtis has been ambushed and a summary judgment standard should not be applied to the instant motion.

## Conclusion

There remain material issues of fact that should go trial concerning whether a bailor-bailee relationship existed between Ken Stuart, Sr. and Curtis, and when the attempted conversion of the Paintings occurred. The belated evidence should be excluded based on Plaintiffs' bad faith in not explaining why it took them years to produce such documents, which has unduly prejudiced Curtis' ability to assert its case meriting denial of applying the Law of the Case doctrine.

Curtis respectfully requests the Court deny Plaintiffs' Motion for Judgment on the Pleadings once more as to ownership of the Paintings and laches and dismiss Plaintiffs' statute of limitations defense.

Respectfully submitted,

William M. Bloss (CT 01008)
KOSKOFF KOSKOFF & BIEDER P.C.
350 Fairfield Avenue
Bridgeport, CT 06604
Tel: (203) 336-4421

Anthony F. Lo Cicero (CT 04670)
Karen J. Bernstein (CT 24254)
AMSTER, ROTHSTEIN & EBENSTEIN LLP
90 Park Avenue
New York, NY 10016
Tel: (212) 336-8000

ATTORNEYS FOR DEFENDANTS


Dated:  October __, 2005          By: _____
        New York, New York              Karen J. Bernstein (CT 24254)

Of Counsel:

Gene R. Leeuw (#08754-49)
John M. Mead (#17459-49)
LEEUW OBERLIES & CAMPBELL
320 North Meridian Street
Suite 1006
Indianapolis, IN 46204
Tel: (317) 684-6960

A

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT
### Bridgeport

| | | |
|---|---|---|
| STUART & SONS, L.P.,<br>THE ESTATE OF KENNETH J. STUART<br>THE KENNETH J. STUART LIVING TRUST<br>KENNETH J. STUART JR.<br>WILLIAM A. STUART, M.D.<br>JONATHAN STUART<br>        *Plaintiffs,* | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | |
|   - against - | :<br>: | Case No. 301 CV 1580 AHN |
| THE CURTIS PUBLISING COMPANY, INC.<br>THE SATURDAY EVENING POST SOCIETY, A<br>DIVISION OF THE BENJAMIN FRANKLIN<br>LITERARY AND MEDICAL SOCIETY, and THE<br>BENJAMIN FRANKLIN LITERARY AND<br>MEDICAL SOCIETY, INC. | :<br>:<br>:<br>:<br>:<br>: | |
|         *Defendants* | :<br>: | April 15, 2005 |

## PLAINTIFFS' RESPONSE TO DEFENDANTS'
## FIRST SET OF INTERROGATORIES

The Plaintiffs submit the following response to the Defendants' First Set of Interrogatories dated March 14, 2005. This response is submitted on behalf of all Plaintiffs.

## INTERROGATORIES

### Interrogatory No. 1:

Identify each person with knowledge or information supporting the allegations in paragraph 38 of the Complaint that "Curtis was fully aware of Ken Sr.'s authority to

1

distribute, and that he did distribute artwork that had appeared in The Post to a variety of people and institutions, including at least one President of the United States."

**Answer:**

Individuals may include, without limitation, Kenneth Stuart Sr., deceased; Ben Hibbs, editor, SEP, deceased; Edith Hibbs; Frank Kilker; Steve Hibbs; Robert McNeill; Mary Curtis; Bok Zimbalist; Bob Fuoss; Bob Sherrod; Norman Rockwell, deceased; Harry Truman, deceased; John Falter; Bunny Beardwood; Amos Sewell; Dick Sargent; Steve Dohanos; Ruth Sewell; Boo Falter; Thornton Utz; Ted Key; Jack Alexander; Marty Sommers; Wesley Price; Clay Blair; Matthew Culligan; Cory SerVaas; Philip Strubing; Don Brennan; Pete Martin; Birdie Martin; Mary Rockwell, deceased; Tommy Rockwell; Jarvis Rockwell; George Hughes; Casey Hughes; Constantine Alajalov; John Clymer; Doug Borgstedt; Gerry Gross; Pat Knopf; Albert Erskine; Philippe Halsman; David Douglas Duncan; members of management, personnel department, and board of directors of Curtis and/or the SEP; Dwight D. Eisenhower, deceased; Arthur Abelman.

Other recipients of artwork distributed by Ken Sr. during his employment with Curtis and/or SEP include, without limitation, The Brooklyn Museum; The Wadsworth Athenaeum; Baseball Hall of Fame; other recipients are unknown to the plaintiffs, and such names are more readily available to the defendants as they may be contained in Curtis corporate records.

**Interrogatory No. 2:**

Identify each document which support Plaintiffs' allegations in paragraph 38 of the Complaint, and the custodian and location of each such document.

**Answer:**    **Objection**.    The Plaintiffs are unaware of any such specific documents, and affirmatively state that any such documents are contained in the corporate records of Curtis and/or The Post.

Notwithstanding the Plaintiffs' objection, to the extent such documents exist and are in the possession or control of the Plaintiffs, they have been made available to Defendant's counsel.

**Interrogatory No. 3:**

Identify each person with knowledge or information supporting the allegations in paragraph 71 of the Complaint that "On June 2, 1986, a letter was sent to Beurt SerVaas confirming that Ken Sr. was then the owner of *Saying Grace* and other works by Rockwell."

**Answer:**

Kenneth Stuart Sr., deceased; Beurt SerVaas; Arthur Abelman, Kenneth Stuart Jr.

**Interrogatory No. 4:**

Identify each document which supports Plaintiffs' allegations in paragraph 71 of the Complaint, and the custodian and location of each such document.

**Answer:**

Letter from Arthur Abelman dated June 2, 1986 to Beurt SerVaas.

**Interrogatory No. 5:**

Identify each person with knowledge or information supporting the allegations in paragraph 73 of the Complaint that "On at least one other occasion following the death of Ken Sr. in 1993, employees reporting to members of the SerVaas family contacted Ken Jr. to inquire about Rockwell artwork in Stuart's possession."

**Answer:**

Employee of Curtis identified only as "Steve"; Corey SerVaas; Kenneth Stuart Jr.; Ross Perot.

**Interrogatory No. 6:**

Identify each document which supports Plaintiffs' allegations in paragraph 73 of the Complaint, and the custodian and location of each such document.

4

**Answer:**    **Objection.**    The Plaintiffs are unaware of any such specific documents, and affirmatively state that any such documents are contained in the corporate records of Curtis and/or The Post.

Notwithstanding the Plaintiffs' objection, to the extent such documents exist and are in the possession or control of the Plaintiffs, they have been made available to Defendant's counsel.

**Interrogatory No. 7:**

Identify each person with knowledge or information supporting the allegations in paragraph 84 of the Complaint that "In the last 20 or so years of his life, Ken Sr. and his family did financial planning and took other actions based upon their ownership of the Paintings and the Defendants' conduct."

**Answer:**

Plaintiffs William A. Stuart, M.D. and Jonathan Stuart have no such information.

Plaintiff Kenneth Stuart Jr. responds as follows:

John Hirschauer; Kenneth Stuart Jr.; Peter Snyder; Vincent Tardino; John Slade; Bob Gradoville; Rich Freiberg.

**Interrogatory No. 8:**

Identify each document which supports Plaintiffs' allegations in paragraph 84 of the Complaint, and the custodian and location of each such document.

**Answer:**

Plaintiffs William A. Stuart, M.D. and Jonathan Stuart have no such documents.

Plaintiff Kenneth Stuart Jr. responds that all such documents have been produced to defendants' counsel.

**Interrogatory No. 9:**

Identify each person with knowledge or information supporting the allegations in paragraph 85 of the Complaint that "Monies were paid to maintain and insure the Paintings as well as to satisfy tax obligations arising out of the ownership of the Paintings."

**Answer:**

Laurie Norton Moffett; Dara Mitchell; Peter Rathbone; Judy Goffman; Plaintiffs; restoration company hired by Norman Rockwell Museum at Stockbridge, Inc.; High Museum of Atlanta; Mills Insurance.

**Interrogatory No. 10:**

Identify each document which supports Plaintiffs' allegations in paragraph 85 of the Complaint, and the custodian and location of each such document.

**Answer:**

To the best of plaintiffs' knowledge and belief, all documents in plaintiffs' possession or control have been produced to defendants' counsel.

**Interrogatory No. 11:**

Identify each person with knowledge or information supporting the allegations in paragraph 86 of the Complaint that "Ownership of the Paintings was ultimately transferred to Stuart & Sons under Connecticut law before Ken Sr. passed away in February, 1993.

**Answer:    Objection.**    This interrogatory is irrelevant to issues regarding the statute of limitations and laches.  In addition, this interrogatory relates to the subject of the litigation in the Connecticut Superior Court matter entitled, Stuart v. Stuart, Docket No. XO8-CV-02-01930031-S (Adams, J.), and responsive documents may be on file in the Connecticut Superior Court.

**Interrogatory No. 12:**

Identify each document which supports Plaintiffs' allegations in paragraph 86 of the Complaint, and the custodian and location of each such document.

**Answer:**     **Objection.**  This interrogatory is irrelevant to issues regarding the statute of limitations and laches.  In addition, this interrogatory relates to the subject of the litigation in the Connecticut Superior Court matter entitled, Stuart v. Stuart, Docket No. XO8-CV-02-01930031-S (Adams, J.), and responsive documents may be on file in the Connecticut Superior Court.

**Interrogatory No. 13:**

Identify each person with knowledge or information supporting the allegations in Plaintiffs' First Affirmative Defense that the "relief that the Defendants seek in the Counterclaims is barred by the statute of limitations."

**Answer:**

Plaintiffs, plaintiffs' counsel, Anthony LoCicero, the law firm of Amster, Rothstein & Ebenstein ("AR&E"); Arthur Abelman.

**Interrogatory No. 14:**

Identify each document which supports Plaintiffs' First Affirmative Defense, and the custodian and location of each such document.

**Answer:**

Documents have been produced by plaintiffs or are in the possession and control of Curtis and AR&E.

**Interrogatory No. 15:**

Identify each person with knowledge or information supporting the Plaintiffs' Second Affirmative Defense that the "relief that Defendants seek in the Counterclaims is barred by the doctrine of laches."

**Answer:**

Plaintiffs, plaintiffs' counsel, Anthony LoCicero, the law firm of Amster, Rothstein & Ebenstein ("AR&E"); Arthur Abelman; Sotheby's; Christie's.

**Interrogatory No. 16:**

Identify each document which supports Plaintiffs' Second Affirmative Defense, and the custodian and location of each such document.

**Answer:**

Documents have been produced by plaintiffs or are in the possession and control of Curtis and AR&E. In addition, documents may be in the possession and control of Sotheby's and Christie's.

9

**Interrogatory No. 17:**

Identify each person with knowledge or information supporting Plaintiffs' Third Affirmative Defense that the "relief that the Defendants seek in the Counterclaims is barred by the doctrine of waiver."

**Answer:**

Plaintiffs, plaintiffs' counsel, Anthony LoCicero, the law firm of Amster, Rothstein & Ebenstein ("AR&E"); Arthur Abelman.

**Interrogatory No. 18:**

Identify each document which supports Plaintiffs' Third Affirmative Defense, and the custodian and location of each such document.

**Answer:**

Documents have been produced by plaintiffs or are in the possession and control of Curtis and AR&E. In addition, documents may be in the possession and control of Sotheby's and Christie's.

**Interrogatory No. 19:**

Identify each person with knowledge or information supporting Plaintiffs' Fourth Affirmative Defense that the "relief that the Defendants seek in the Counterclaims is barred by the doctrine of estoppel."

**Answer:**

Plaintiffs, plaintiffs' counsel, Anthony LoCicero, the law firm of Amster, Rothstein & Ebenstein ("AR&E"); Arthur Abelman.

**Interrogatory No. 20:**

Identify each document which supports Plaintiffs' Fourth Affirmative Defense, and the custodian and location of each such document.

**Answer:**

Documents have been produced by plaintiffs or are in the possession and control of Curtis and AR&E. In addition, documents may be in the possession and control of Sotheby's and Christie's.

<div style="margin-left:40%;">

**PLAINTIFFS,
WILLIAM STUART
JONATHAN STUART**

By _____
    Sandra J. Akoury (ct 21279)
    Law Offices of Sandra J. Akoury
    426 Danbury Road
    Wilton, Connecticut 06897
    203-563-9230

</div>

11

**STUART & SONS, L.P.**

By _____
    Peter R. Stern
    McLaughlin & Stern, LLP
    260 Madison Avenue
    New York, New York
    212-803-1299

12

# CERTIFICATION

This is to certify that a copy of the foregoing was sent via U.S. mail, postage prepaid, and via electronic mail, on this 15th day of April, 2005, to the following counsel and *pro se* parties of record:

William M. Bloss, Esq.
Koskoff, Koskoff & Bieder, P.C.
350 Fairfield Avenue
Bridgeport, CT 06604

Anthony F. LoCicero, Esq.
Karen J. Bernstein, Esq.
Amster, Rothstein & Ebenstein, LLP
90 Park Avenue
New York, NY 10016

Peter R. Stern, Esq.
McLauglin & Stern, LLP
260 Madison Avenue
New York, NY 10016

Mary E. Sommer, Esq.
Sandak, Hennessey & Greco, LLP
707 Summer Street
Stamford, CT 06901

Paul J. Pacifico, Esq.
965 Post Road East
Westport, CT 06880

Kenneth J. Stuart Jr.
5 High Ridge Road
Wilton, CT 06897

/Sandra J. Akoury