UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
Bridgeport

| | |
|---|---|
| STUART & SONS, L.P., : <br> THE ESTATE OF KENNETH J. STUART : <br> THE KENNETH J. STUART LIVING TRUST : <br> KENNETH J. STUART JR. : <br> WILLIAM A. STUART, M.D. : <br> JONATHAN STUART : <br> *Plaintiffs*, : <br> : <br> : <br> - against - : <br> : Case No. 301 CV 1580 AHN <br> THE CURTIS PUBLISHING COMPANY, INC. : <br> THE SATURDAY EVENING POST SOCIETY, A : <br> DIVISION OF THE BENJAMIN FRANKLIN : <br> LITERARY AND MEDICAL SOCIETY, and THE : <br> BENJAMIN FRANKLIN LITERARY AND : <br> MEDICAL SOCIETY, INC. : <br> : <br> *Defendants* :  May 8, 2006 | |

**PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE TO MOTION FOR SUMMARY JUDGMENT AND SUPPLEMENTAL DOCUMENT PRODUCTION**

Plaintiffs hereby reply to Defendants' Response to Motion for Summary Judgment and Supplemental Production dated April 28, 2006. This reply is filed on behalf of all Plaintiffs. In accordance with the Court's Order of February 27, 2006, the Defendants were given 60 days, until April 28, 2006, to meet the facts outside the pleadings and to present all material pertinent to a Rule 56 motion.

The Plaintiffs assert that the Defendants have failed to meet the facts outside the pleadings, and that this matter is not the subject of a genuine material issue of fact as to ownership of three Norman Rockwell ("Rockwell") paintings entitled "*The Gossips*", "*Saying Grace*", and "*Walking to Church*" (also known as "*Silver Slipper*

1

*Grill*")("Paintings"), which are in dispute. Defendants have offered no new evidence to support their claim that there are genuine material facts at issue, but have merely rehashed their previous legal arguments, all of which must fail. Furthermore, the Defendants have offered nothing to dispute the Plaintiffs' evidence on the subject of ownership, and upon information and belief, made no attempt during the sixty days since the Court's order to address the Plaintiffs' affidavits through deposition or otherwise contacting the affiants, and have not pursued legal action against any other owners of the more than 300 covers painted by Norman Rockwell for *The Saturday Evening Post*.

The Plaintiffs maintain that the Defendants Motion for Summary Judgment should be denied, and that the Plaintiffs' converted Motion should be granted.

## I.   PRELIMINARY STATEMENT

Plaintiffs respond to the Defendants' claims as follows: (1) the "confirmation" or "purchase" order documents do not, as a matter of law, vest ownership of the Paintings in the Defendants; (2) Plaintiffs agree that Mr. Stuart Sr. had rightful possession of the Paintings from the outset, and that the Stuart family retains not only rightful possession, but rightful ownership of the Paintings since the 1950s, as a matter of law under Connecticut conversion law and other applicable legal theories; (3) that laches does apply in the present action, as the Plaintiffs have been prejudiced by Defendants' delay in asserting their claims, as explained further below, and that the Plaintiffs do not have unclean hands; (4) the documents submitted with the Supplemental Akoury Declaration dated August 19, 2005 ("Suppl. Akoury Decl.") are admissible and relevant to this action, as explained further below; (5) that the affidavits submitted by the Plaintiffs as Exhibits B, C and I to the Suppl. Akoury Decl. are competent evidence pursuant to Fed. R. Civ. P. 56 and the rules of evidence, as explained below; (6) that as Mr. Stuart Sr. had rightful ownership of the

2

Paintings, which fact the Defendants have produced nothing to dispute, the individual Plaintiffs inherited clear title to them; and, (7) the Court has already ruled on Defendants' argument regarding the "law of the case doctrine" and has accepted the Plaintiffs' Motion for Judgment on the Pleadings dated June 14, 2005, and converted same to a motion for summary judgment, as the Court in its discretion may do pursuant to Fed. R. Civ. P. 12(c).

## II.  ARGUMENT

### 1.  The Original Agreement as to the Rockwell Paintings

As the Plaintiffs have repeatedly stated, the agreements or purchase orders, which the Defendants claim are irrefutable proof that they purchased ownership of the Paintings originally, are not, as a matter of law, proof that the original canvasses were ever included in those agreements, or that the Paintings at issue were even the subject of any such agreements. The Defendants have produced nothing tying the particular Paintings at issue to any such agreements, and have failed to respond to Plaintiffs' argument that there were at least two forms of agreement used by the Defendants. (Plaintiffs' Local Rule 56(a)2 Statement, Court's Doc.# 85, Exhibits A, B.) The contract form submitted as Exhibit A to the declaration of Anthony F. LoCicero dated April 28, 2006, adds nothing further to the Defendants' argument.[1] Rather, it supports the Plaintiffs' claim, that as a regular and accepted course of conduct, original Paintings were returned to Mr. Rockwell. (Suppl. Akoury Decl., Exh. C.) Significantly, they have not produced one shred of credible evidence demonstrating any ownership of the Paintings at issue in this lawsuit – because none exists.

---

[1] It is curious that Defendants now rely on this particular unsigned purchase form, which refers to the Rockwell paintings commonly known as "The Four Freedoms." In the Affidavit of Thomas Rockwell, Exh. C to the Suppl. Akoury Decl., Mr. Rockwell states that those paintings were returned to his father by Curtis Publishing.

Defendants' argument that the only basis for Plaintiffs' knowledge of the terms of Norman Rockwell's dealings with Curtis Publishing is by a review of the unsigned order forms is an inaccurate and baseless misrepresentation. The Plaintiffs have specific personal knowledge of these facts from both Norman Rockwell and their father, the individuals who provided affidavits, and other individuals with whom they had discussions throughout their lives, most of whom are now deceased. Moreover, the Plaintiffs have numerous documents produced by the Defendants in which the terms of reproduction rights and book rights are discussed. (See, *e.g.,* Exh. F to Suppl. Akoury Decl.) None of those documents or rights are relevant to this action, and many are not part of the record. However, Defendants are fully aware that these documents exist, and the discussions contained therein. To assert to the Court that the Plaintiffs have no means of understanding the terms of Mr. Rockwell's interaction with *The Saturday Evening Post* other than by reviewing one or two documents that the Defendants chose to submit to the Court is disingenuous, and should be ignored by the Court.

The Plaintiffs have repeatedly addressed the Defendants' claims on this issue in their prior pleadings, and those arguments will not be repeated here. As the Defendants have produced no new evidence to support their claim, the Plaintiffs' position remains as it was in their Reply to Defendants' Motion for Summary Judgment, dated July 6, 2006, Doc. #69.

The Plaintiffs maintain that the Defendants have not met their burden of proving that no reasonable minds could differ as to the interpretation or relevance of the unsigned purchase orders, and therefore, Defendants' Motion for Summary Judgment must fail.

2. **Mr. Stuart Sr.'s Possession was Rightful from the Outset**

As the Plaintiffs agree with the Defendants' position, this fact is not in dispute. However, the import of this fact is crucial to this matter as it determines which theory of conversion, if any, applies. The Plaintiffs assert that Norman Rockwell gave these Paintings to Mr. Stuart Sr. in the early 1950s, that Mr. Rockwell had good title to the Paintings at that time, and that the Defendants were aware of and supported this gift. (See Suppl. Akoury Decl., Exh. D.)

As the Plaintiffs have consistently argued, and as quoted in the Defendants' brief, Mr. Stuart Sr. always had rightful possession and ownership of the Paintings. The Defendants' claim of conversion first arose in their Answer and Special Defenses, initially dated September 12, 2001.[2] (Doc. # 6.) Thereafter, they raised this claim in oral argument before the Court on June 10, 2004. Because the Defendants raised a claim of conversion in their Answer and at oral argument, the Plaintiffs have been forced to address these claims, despite that they contend that Mr. Stuart Sr.'s possession and ownership was rightful from the 1950s.

There is no dispute that there are two theories of conversion in Connecticut law: that in which the possession is wrongful from the outset, and that in which the initial possession was rightful. However, under either theory, the Plaintiffs should prevail.

First, if Mr. Stuart Sr.'s possession was wrongful from the outset, then the Defendants had notice of Mr. Stuart Sr.'s possession and claims of ownership from at least 1963, when he left the employ of *The Saturday Evening Post* in possession of them. Clearly, the statute of limitations would have commenced at that time, and expired in 1966, some thirty-five years before the Defendants made any claim.

---

[2] The Defendants' Answer was first filed on September 12, 2001 (Doc. # 6) and was later refiled on November 12, 2004 (Doc. # 49), in response to Plaintiffs' Amended Complaint. For purposes of this brief, only the operative Answer is referred to.

If, on the other hand, Mr. Stuart Sr.'s possession was rightful from the beginning, then his repeated assertions of ownership were acts of dominion and control, and would have triggered the applicable statute of limitations decades ago. Commencing in the late 1960s in various publications and continuing through his sons until the present, the Stuart family has consistently publicly maintained that it owns the Paintings. Certainly the 1986 letter from Attorney Abelman, which the Defendants no longer deny having received, was an act of dominion and control by Mr. Stuart Sr. Therefore, at the very latest, the statute of limitations would have expired in 1989.

It is simply implausible that for over fifty years, none of the Defendants ever attempted to verify that the Paintings were insured or properly protected, displayed or stored. They did not prepare a single document evidencing their recent assertion that the Stuart family was merely in possession of the Paintings. And significantly, they have sued no other individual owners of Norman Rockwell originals that appeared in or on *The Saturday Evening Post*. Most recently, a Rockwell original painting, *Homecoming Marine*, which appeared on the cover of *The Saturday Evening Post* on October 13, 1943, has been scheduled for auction on May 24, 2006 by Sotheby's. A copy of the auction catalog is attached as Exhibit A. It is noteworthy that the provenance of the painting listed in the catalog is Gene Davis, and that this individual, a former employee of *The Saturday Evening Post*, and this painting itself are the subject of the document attached to the Suppl. Akoury Decl. as Exhibit Q.[3]

---

[3] The Defendants have repeatedly stated that they were content to have possession of the Plaintiffs' Paintings reside with the Stuart family, until they were contacted by Sotheby's regarding a possible sale of the Plaintiffs' Paintings. It is curious that they do not have the same concerns regarding Mr. Davis's auction of his Rockwell painting.

Finally, the Defendants have now asserted, for the first time, that their demand for return of the Paintings was their filing of their counterclaim in the present lawsuit. Clearly, the Defendants' counterclaim is merely seeks a declaratory judgment, and in no way makes demand for the return of the Paintings.

There is simply no plausible issue of fact regarding the conduct of the parties over the course of the last fifty years. The Defendants have alleged none in their brief, and none exist. The question of when the statute of limitations commenced is a question of law, not of fact. Therefore, summary judgment is appropriate in this matter.

### 3. Plaintiffs have been prejudiced by the Defendants' delay, and the Plaintiffs do not have unclean hands.

As a matter of law, the Plaintiffs have been prejudiced by the Defendants' delay in bringing their claims. The competent witnesses, who participated in the transactions that are central to this dispute are all deceased. Many of the documents evidencing the original transactions have been lost or destroyed, as Defendants admitted in their Motion to Strike and Motion to Preclude. (Docs. 87 and 88.) These prejudices, in and of themselves, are sufficient for the Plaintiffs to prevail on their claim of laches. ***Wertheimer v. Cirker's Hayes Storage Warehouse, Inc.,*** 752 N.Y.S.2d 295, 2002 WL 31819634 (N.Y.A.D. 1st Dept. Dec. 17, 2002).[4]

Defendants assert that there is nothing in the record regarding Plaintiffs' prejudice, and that Plaintiffs have provided no evidence of their prejudice. Plaintiffs invite the Court to review their Amended Complaint, paragraphs 84 and 85, which provide the basis for the Plaintiffs' claim of prejudice. Defendants also misrepresent that they were provided none

---

[4] A copy of this decision was attached to the Plaintiffs' Motion for Judgment on the Pleadings (Doc. #57) as Exhibit 2.

7

of the documents supporting these claims. During the discovery phase, in response to their request for production, the Defendants were given full access to the Plaintiffs' records containing all of this information. In or about March 2005, Attorney Karen Bernstein, formerly of Amster, Rothstein & Ebenstein and counsel to the Defendants, did review all of these documents, and obtained copies of all she requested. It is incredible that Defendants now state that they were never given these documents. The Defendants should not benefit from these appalling misrepresentations.

Finally, the Defendants' claim that the Stuart family has "unclean hands" is simply outrageous, and nothing more than a red herring. The matter before the Connecticut courts has no bearing on the matter before this Court, and this is merely an unnecessary and inappropriate *ad hominem* attack on the Plaintiffs. The Court is respectfully requested to disregard this portion of Defendants' brief.

Again, in this portion of their brief, the Defendants have cited no factual dispute that would preclude a summary judgment in this matter. Their reliance on the "demand" letters as a factual dispute is misplaced. There is no dispute that any of these letters were sent or received. The only interpretation to be made is whether, as a matter of law, any of these letters constitute a demand, and whether any such demand, if made, was necessary. This is simply a legal question. As there are no facts in dispute, this matter is appropriate for summary judgment.

### 4. & 5.    The "newly found" documents and affidavits are admissible and relevant to this action.

The Defendants' allegations regarding the admissibility of these documents ignores basic rules of evidence. Most of the documents submitted by the Plaintiffs are ancient documents, and many are published compilations. Therefore, these documents are

exceptions to the hearsay rules. Fed. R. Evid. 803 (16) and (17). In addition to the ancient document exception, many of the documents are letters that are on *Saturday Evening Post* or Curtis Publishing letterhead. Not only are these documents business records of the Defendants, and therefore admissible, but they are admissions as well. Therefore, these documents are admissible. Fed. R. Ediv. 804(a), Fed. R. Evid. 801(d)(2).

Moreover, the affidavits are not "double hearsay" as the Defendants allege. The statements contained within the affidavits are all made with the personal knowledge of each affiant. Although many refer to statements of others, these statements are competent evidence in that they are statements of deceased persons, and therefore are admissible. Conn. Gen. Stat. § 52-172.

Finally, regarding Defendants' comments as to the mailbox rule discussed at the hearing on February 27, 2006, they have misstated the Plaintiffs' position and misquoted the transcript. As the transcript shows, Plaintiffs' counsel stated that until the Defendants' raised the argument that the mailbox rule did not apply to certified mailing, the Plaintiffs had in fact relied on it. (Tr., p. 72:25.) Defendants' counsel should be aware from their own brief on this subject that the mailbox rule was inapplicable in regard to the 1986 letter from Attorney Abelman, which was a certified mailing. (Def. Memo of Law in Opposition to Pl. Motion for Judgment, Doc. #65, p. 2.)

It is interesting that despite having been given an additional 60 days within which to respond to the documents attached to the Suppl. Akoury Decl., the Defendants have not disputed one fact contained within those documents, or produced any documents that contradict them. As no facts contained in those documents are in dispute, this matter is suitable for summary judgment.

9

**6.  Mr. Stuart Sr. had rightful ownership of the Paintings, as do the Plaintiffs.**

As the Defendants have raised no new facts that dispute Mr. Stuart Sr.'s ownership of the Paintings, the individual Plaintiffs have inherited clear title to the Paintings. The matter now before the Connecticut court has no relevance to Defendants' claim of ownership, and will not be addressed here.

## III.  CONCLUSION

The Defendants have pointed to no material facts in dispute regarding the conduct of the parties or their predecessors over the last fifty years. The Defendants have provided nothing to contradict the facts contained within the documents submitted by the Plaintiffs. The arguments raised by the Defendants, most of which are merely repeated from their earlier pleadings, are simply questions of application of law. As the Plaintiffs have repeatedly stated, there are no facts in dispute, and this matter is appropriate for summary judgment.

**WHEREFORE**, the Plaintiffs respectfully request that the Court grant their converted Motion, and deny Defendants' Motion for Summary Judgment.

Respectfully submitted,
The Plaintiffs
William A. Stuart, M.D. and Jonathan Stuart

By: _____
Sandra J. Akoury (ct 21279)
Law Offices of Sandra Akoury
426 Danbury Road
Wilton, Connecticut 06897

# CERTIFICATION

This is to certify that a copy of the foregoing was sent via facsimile transmission and U.S. mail, postage prepaid on this 8th day of May, 2006, to the following counsel and *pro se* parties of record:

William M. Bloss, Esq.
Koskoff, Koskoff & Bieder, P,C.
350 Fairfield Avenue
Bridgeport, CT 06604

Kenneth J. Stuart Jr.
5 High Ridge Road
Wilton, CT 06897

Anthony F. LoCicero, Esq.
Amster, Rothstein & Ebenstein, LLP
90 Park Avenue
New York, NY 10016

Paul J. Pacifico, Esq.
426 Danbury Road
Wilton, CT 06897

Peter R. Stern, Esq.
McLaughlin & Stern, LLP
260 Madison Avenue
New York, NY 10016

Mary E. Sommer, Esq.
Sandak, Hennessey & Greco, LLP
707 Summer Street
Stamford, CT 06901

_____
Sandra J. Akoury